IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

KENDALL DEALERSHIP HOLDINGS, LLC, )
)
                      Plaintiff,  )
)
  vs.                                             )
)
WARREN DISTRIBUTION, INC., a Nebraska )
Corporation,                            )
)
                      Defendant.  )
_____)
)
WARREN DISTRIBUTION, INC.,          )      No. 3:18-cv-0146-HRH
)
              Third Party Plaintiff,  )
)
  vs.                                           )
)
ELECTRICAL COMPONENTS                )
INTERNATIONAL, INC. and ELECTRICAL )
COMPONENTS CANADA, INC.,           )
)
              Third Party Defendants.  )
_____)

O R D E R

Motion for Summary Judgment

Defendant moves for summary judgment.[1] Third-party defendants join in this motion.[2] Defendant's motion is opposed.[3] Oral argument was requested but is not deemed necessary.

---

[1] Docket No. 43.

[2] Docket No. 46.

[3] Docket No. 47.

Facts

Plaintiff is Kendall Dealership Holdings, LLC. Defendant is Warren Distribution, Inc. Third-party defendants are Electrical Components International, Inc. (ECI) and Electrical Components Canada, Inc. (ECC).

Plaintiff alleges that it has purchased engine block heaters from defendant since at least 2014.[4] Plaintiff alleges that the engine block heaters it purchased from defendant were "identical to an engine block heater that is the subject of a safety recall in vehicles sold in Canada by Toyota Canada."[5] Defendant contends that the engine block heaters that are the subject of the recall were manufactured by ECC and are not the same engine block heaters it sold to plaintiff.

Plaintiff alleges that the engine block heaters it purchased from defendant "were improperly manufactured due to either [a] short circuit in the electrical cord of the engine block heater and/or too much wattage produced by the engine block heaters."[6] Plaintiff alleges that "[s]everal vehicles sold by Kendall with the engine block heaters installed have caused a fire as a result of the improperly manufactured engine block heaters."[7]

---

[4]Complaint at 2, ¶¶ 5-6, Exhibit A, Notice of Removal, Docket No. 1.

[5]Id. at 2, ¶ 9.

[6]Id. at 2, ¶ 11.

[7]Id. at 2, ¶ 13.

On June 21, 2018, plaintiff commenced this action. Plaintiff asserts breach of contract, UTPA, breach of the implied warranty of merchantability, and breach of the implied warranty of fitness for a particular purpose claims against defendant.

On October 19, 2018, defendant filed a third-party complaint against ECC and ECI. Defendant alleges that it "purchased Pyroil brand block heaters from ECI, which it then resold to Kendall" and that "the Pyroil block heaters were manufactured by ECC."[8] Defendant alleges that "[i]f . . . the block heaters manufactured by ECC and sold by ECI are found to be defective, Warren is entitled to be indemnified or reimbursed by them for any damages or judgment it is required to pay Kendall."[9]

Defendant now moves for summary judgment on all of plaintiff's claims, arguing that plaintiff has no evidence that the engine block heaters it purchased from defendant were defective. Third-party defendants join in defendant's motion.[10]

Discussion

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The initial burden is on the moving party to show that there is an absence of genuine issues of

---

[8]Third Party Complaint at 3, ¶ 8, Docket No. 21.

[9]Id. at 3, ¶ 10.

[10]Third-party defendants do not argue that they are entitled to summary judgment on Warren's claims against them. Rather, they argue that Warren is entitled to summary judgment on plaintiff's claims against Warren.

material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the moving party meets its initial burden, then the non-moving party must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). In deciding a motion for summary judgment, the court views the evidence of the non-movant in the light most favorable to that party, and all justifiable inferences are also to be drawn in its favor. Id. at 255.

Defendant contends, and plaintiff does not dispute, that in order for plaintiff to prevail on any of its claims it will have to prove that the engine block heaters that it purchased from defendant were defective. But, defendant argues that plaintiff has no evidence that will prove that the engine block heaters in question were defective.

First, defendant argues that plaintiff has no evidence that shows that the engine block heaters it purchased were identical to the recalled Canadian block heaters. Defendant asked plaintiff to "produce all documents showing that the engine block heater(s) at issue in this case are identical to the engine block heater that was subject to the block heater recall relating to Toyotas sold in Canada."[11] Plaintiff responded that "[d]ocuments responsive to this request[] are not within the possession, custody, or control of [p]laintiff."[12] Because

---

[11]Kendall Dealership Holdings, LLC's Responses to Defendant's First Discovery Requests at 8, Exhibit 1, Defendant Warren Distribution's Motion for Summary Judgment [etc.], Docket No. 43.

[12]Id.

plaintiff produced no evidence in response to this interrogatory, defendant contends that plaintiff has no evidence on this issue.

Plaintiff disagrees and cites to its responses to ECC & ECI's first set of discovery requests. Although "[a] plaintiff's discovery responses generally are not proper 'evidence' to establish a genuine dispute of material fact[,]" they can be when they are "are verified, signed under penalty of perjury and based in part on . . . personal knowledge." Griffin v. Johnson, Case No. 1:13–cv–01599–LJO–BAM (PC), 2017 WL 4012817, at *2 (E.D. Cal. Sept. 11, 2017). Plaintiff's responses were verified by Dave Blewett, plaintiff's president, and some of the statements in the responses are plainly based on Blewett's personal knowledge. Thus, the court can consider plaintiff's discovery responses in determining whether plaintiff has come forward with evidence to show that there are genuine issues of material fact as to whether the engine block heaters were defective.

In its responses to ECI and ECC's interrogatories, plaintiff states that "Jimmy O'Connor, the National Accounts Manager with Warren Distribution, told Dave Blewett, President of Kendall, that the engine block heaters sold to Kendall were the same engine block heaters that were subject to the Canadian recall."[13] Plaintiff also states that "Dave Blewett spoke with Jeff Harbaugh and Steve Haag with Toyota USA who spoke with

---

[13]Kendall Dealership Holdings, LLC's Responses to Third Party Defendants' First Set of Discovery Responses [etc.] at 2, Exhibit A, Kendall Dealership Holdings, LLC's Opposition to Warren Distribution Inc.'s Motion for Summary Judgment [etc.], Docket No. 47.

representatives of Toyota Canada, who confirmed the block heaters sold to Kendall were the same block heaters as those subject to the Canadian recall."[14]

Defendant argues that anything Blewett was told is inadmissible hearsay, but that is not necessarily so. What O'Connor told Blewett could be an admission of a party opponent and thus it would not be hearsay. FRE 801(d)(2). Plaintiff has come forward with sufficient evidence to show that there are material questions of fact as to whether the engine block heaters it purchased from defendant were the same as the ones that were subject to the Canadian recall.

Defendant next argues that plaintiff has no evidence that the Canadian block heaters that were recalled were actually defective. Defendant asked plaintiff to produce "all documents showing that the engine block heater recalled by Toyota Canada in fact was defective."[15] Plaintiff again responded that "[d]ocuments responsive to this request[] are not within the possession, custody, or control of [p]laintiff."[16] Because plaintiff produced no evidence in response to this interrogatory, defendant contends that plaintiff has no evidence on this issue. Moreover, defendant offers evidence that it contends shows that there was no defect with the Canadian engine block heaters. In an email, one of defendant's employees

---

[14] Id.

[15] Kendall Dealership Holdings, LLC's Responses to Defendant's First Discovery Requests at 8, Exhibit 1, Defendant Warren Distribution's Motion for Summary Judgment [etc.], Docket No. 43.

[16] Id.

informed one of plaintiff's employees that "the smoke issues that arose and resulted in the Toyota Canada recall were not able to be recreated during months of testing between Toyota and ECI."[17] Thus, defendant insists that plaintiff has no evidence that the Canadian block heaters were in fact defective.

Plaintiff, however, argues that the notice of recall itself creates a question of fact as to whether the Canadian block heaters were actually defective. The Canadian recall notice states that "the electrical power cords on some dealer installed block heaters may have been improperly manufactured, causing the wires to contact each other, resulting in a short circuit."[18]

Third-party defendants argue that the recall notice is not evidence that the Canadian block heaters were defective because it does not state that it has been determined that the block heaters were improperly manufactured. Rather, the recall notice only states that the electrical cords on some vehicles may have been defective.

But the recall notice at least suggests that the Canadian engine block heaters were defective. Plaintiff has come forward with sufficient evidence to create an issue of fact as to whether the Canadian engine block heaters were actually defective.

---

[17]Exhibit 4 at 1, Defendant Warren Distribution's Motion for Summary Judgment [etc.] Docket No. 43.

[18]Exhibit D at 1, Kendall Dealership Holdings, LLC's Opposition to Warren Distribution Inc.'s Motion for Summary Judgment [etc.], Docket No. 47.

Finally, defendant argues that plaintiff has no evidence as to any specific defect in the block heaters it purchased from defendant. Defendant asked plaintiff to produce "all documents relating to any investigation of defects to or testing you performed on (or had performed on) block heaters for the period 2013 to present."[19] Plaintiff responded "[s]ee attached[,]"[20] but defendant argues that all plaintiff produced was a complaint from a customer that his Toyota truck was "plugged into [the] block heater and exploded and burned for [a] total loss."[21] But, defendant argues that plaintiff has not produced any evidence that ties the fire to a defective block heater. The customer reported that he had previously complained of "hot engine smells" and difficulties with the vehicle starting at 40 degrees.[22] But, defendant argues that these problems do not necessarily suggest that there was a problem with the block heater.

Plaintiff argues that it does have evidence that the block heaters it purchased from defendant were defective and again cites to its responses to ECC & ECI's first discovery requests. In answer to an interrogatory, plaintiff identified nine vehicles "in which a block

---

[19]Kendall Dealership Holdings, LLC's Responses to Defendant's First Discovery Rquests at 7, Exhibit 1, Defendant Warren Distribution's Motion for Summary Judgment [etc.], Docket No. 43.

[20]Id.

[21]Exhibit 2 at 4, Defendant Warren Distribution's Motion for Summary Judgment [etc.] Docket No. 43.

[22]Id.

engine hea[ter] cord melted or was physically damaged. . . ."[23]  Plaintiff argues that this is sufficient evidence to create an issue of fact as to whether the block heaters it purchased from defendant were defective.

Defendant argues that this list of nine vehicles is not sufficient to create an issue of fact because it is not clear that the engine block heater was the cause of the cord melting or being physically damaged.  Defendant also argues that the number of vehicles is too small to suggest that there was any kind of defect.  Defendant suggests that it is just as likely that the cause of the problem was that plaintiff had installed the engine block heaters incorrectly.  Third-party defendants, for their part, offer a report done by an insurance investigator on one of the nine vehicles, in which the investigator stated that he "could not find a[ny] specific evidence that would indicate the block heater or the installation by the dealer certainly or potentially caused or contributed to a fire in the engine compartment."[24]  Thus, third-party defendants argue that plaintiff's contention that it has evidence showing that the engine block heaters installed in the nine vehicles were defective is questionable.

While the report offered by the third-party defendants does suggest that plaintiff's evidence of actual defects might not be as robust as plaintiff made out, the fact remains that plaintiff has come forward with evidence that there were eight other vehicles that had engine

---

[23]Kendall Dealership Holdings, LLC's Responses to Third Party Defendants' First Set of Discovery Requests [etc.] at 5, Exhibit A, Kendall Dealership Holdings, LLC's Opposition to Warren Distribution Inc.'s Motion for Summary Judgment [etc.], Docket No. 47.

[24]Shideh Engineering Report at KDH 005455, Exhibit 1, Memorandum in Reply to Motion for Summary Judgment, Docket No. 49.

block heaters installed and that either caught fire or the cord on the heater melted. Circumstantial evidence is sufficient to prove a defect. <u>Alaska Rent-A-Car, Inc. v. Ford Motor Co.</u>, 526 P.2d 1136, 1141 (Alaska 1974). Plaintiff has come forward with sufficient circumstantial evidence to survive defendant's motion for summary judgment.

Conclusion

Plaintiff's request[25] for oral argument is denied. Defendant's motion for summary judgment[26] is denied.[27]

DATED at Anchorage, Alaska, this 12th day of August, 2019.

/s/ H. Russel Holland
United States District Judge

---

[25]Docket No. 50.

[26]Docket No. 43.

[27]Because defendant's motion for summary judgment is denied, the court need not consider plaintiff's request for a 180-day continuance pursuant to Rule 56(d), Federal Rules of Civil Procedure.