WO  IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

KENDALL DEALERSHIP HOLDINGS, LLC, )
)
                        Plaintiff,  )
)
  vs.                                     )
)
WARREN DISTRIBUTION, INC., a Nebraska )
Corporation,                          )
)
                        Defendant.  )
_____)
)
WARREN DISTRIBUTION, INC.,          )      No. 3:18-cv-0146-HRH
)
            Third Party Plaintiff,  )
)
  vs.                                     )
)
ELECTRICAL COMPONENTS              )
INTERNATIONAL, INC. and ELECTRICAL )
COMPONENTS CANADA, INC.,          )
)
            Third Party Defendants.  )
_____)

O R D E R

Motion to Allocate Fault to an Absent Third Party

Defendant moves to allocate fault to Toyota Canada as an absent third party.[1] This motion is opposed.[2] Oral argument was requested[3] but is not deemed necessary.

---

[1] Docket No. 63.

[2] Docket No. 66.

[3] Docket No. 69.

Background

Plaintiff Kendall Dealership Holdings, LLC alleges that engine block heaters which it purchased from defendant Warren Distribution, Inc. were defective. Plaintiff alleges that the engine block heaters it purchased from defendant "were improperly manufactured due to either a short circuit in the electrical cord of the engine block heater and/or too much wattage produced by the engine block heaters."[4] Plaintiffs allege that the block heaters it purchased were identical to block heaters that were the subject of a recall of vehicles sold in Canada by Toyota Canada.[5] Defendant represents that discovery has borne this out, that the block heaters plaintiff purchased from it were the same heaters that were the subject of the Canadian recall.[6]

Plaintiff asserts breach of contract, UTPA, breach of the implied warranty of merchantability, and breach of the implied warranty of fitness for a particular purpose claims against defendant.

Defendant has filed a third-party complaint against Electrical Components International, Inc. (ECC) and Electrical Components Canada, Inc. (ECI). Defendant alleges that it "purchased Pyroil brand block heaters from ECI, which it then resold to Kendall" and

---

[4]Complaint at 2, ¶ 11, Exhibit A, Defendant's Notice of Removal, Docket No. 1.

[5]Id. at 2, ¶¶ 9-10.

[6]Motion to Allocate Fault to Absent Third Party at 4, Docket No. 63.

that "the Pyroil block heaters were manufactured by ECC."[7] Defendant alleges that "[i]f . . . the block heaters manufactured by ECC and sold by ECI are found to be defective, Warren is entitled to be indemnified or reimbursed by them for any damages or judgment it is required to pay Kendall."[8]

Defendant now moves for order allowing it to allocate fault to Toyota Canada as an absent third party.

Discussion

Under Alaska's "apportionment of damages" statute, AS 19.17.080, fault[9] may be allocated to non-parties if certain conditions are met. Evans ex rel. Kutch v. State, 56 P.3d 1046, 1059 (Alaska 2002). First, "[i]n order to include a non-party in the fault allocation, a defendant must identify the non-party as someone who the defendant will argue is at fault[.]" Id. at 1060. Second, "the defendant will have to show that the person could not be added as

---

[7]Third Party Complaint at 3, ¶ 8, Docket No. 21.

[8]Id. at 3, ¶ 10.

[9]"Fault" for purposes of this statute

> includes acts or omissions that are in any measure negligent, reckless, or intentional toward the person or property of the actor or others, or that subject a person to strict tort liability. The term also includes breach of warranty, unreasonable assumption of risk not constituting an enforceable express consent, misuse of a product for which the defendant otherwise would be liable, and unreasonable failure to avoid an injury or to mitigate damages.

AS 09.17.900.

a third-party defendant either because that person is outside the jurisdiction of the court or because by law or court rule the person cannot be named as a party." Id. at 1061.

As an initial matter, plaintiff argues that AS 19.17.080 has no application here because its complaint sounds in contract, and AS 19.17.080 only applies to the allocation of fault in cases sounding in tort. "Generally, the nature of the injury determines whether the complaint sounds in contract or in tort." Howell v. Ketchikan Pulp Co., 943 P.2d 1205, 1208 (Alaska 1997). Plaintiff argues that because it is not claiming personal injury damages or property damages, the nature of its injuries sound in contract. Plaintiff cites to Anchorage v. Integrated Concepts and Research Corp., No. 3:13–cv–00063–SLG, 2015 WL 1345252 (D. Alaska March 23, 2015), in support of its argument. There, the court considered "whether AS 09.17.080 applies only to the allocation of fault in tort or also to an allocation of contract damages." Id. at *4. The court concluded "that Alaska Statute 09.17.080 . . . allows for the allocation of fault as to tort claims and not contract claims." Id. at *5. In reaching this conclusion, the court noted that

> [t]he definition of fault in AS 09.17.900 applies somewhat more broadly than to purely tort claims. See AS 09.17.900 ("'fault' includes . . . breach of warranty, unreasonable assumption of risk not constituting an enforceable express consent, misuse of a product for which the defendant otherwise would be liable, and unreasonable failure to avoid an injury or to mitigate damages"). However, there is no indication that by providing this list the legislature intended to broaden the use of the term "fault" as it is used in AS 09.17.080 to include a claim that sounds purely in contract[.]

Id. at *5 n.37. Plaintiff acknowledges that it has asserted breach of warranty claims against defendant, but argues that those claims sound in contract, not tort.

Whether plaintiff's breach of warranty claims sound in contract or tort is irrelevant. "Fault" for purposes of AS 09.17.080 expressly includes "breach of warranty" and plaintiff has asserted two breach of warranty claims against defendant. Thus, AS 09.17.080 applies to plaintiff's breach of warranty claims Integrated Concepts and Research is not to the contrary. There, the court was considering whether AS 09.17.080 applies to contract claims. The court was not considering whether AS 09.17.080 should apply to breach of warranty claims. That plaintiff is not seeking personal injury or property damages is of no import. AS 09.17.080 does not limit its application to only such claims. And, as defendant points out, if the Alaska legislature wanted to limit AS 09.17.080 to claims involving personal injury and property damage, it knew how to do that. See, e.g., AS 09.17.060 (applying contributory fault to claims of personal injury and property damage). But because the legislature included breach of warranty in the definition of "fault" for purposes of AS 09.17.080, the legislature plainly did not intend to limit AS 09.17.080 to only claims involving personal injury and property damage.

If AS 09.17.080 applies here, which it does as to plaintiff's breach of warranty claims, then defendant argues that it has met the two conditions that must be satisfied to allocate fault to an absent third party. First, defendant contends that it has identified Toyota Canada as an entity which it will argue is at fault. This contention is based on the deposition testimony of

Dennis Whitelaw, who defendant represents is a design engineer employed by ECC. Defendant contends that Whitelaw's testimony establishes that Toyota Canada was responsible for the design of the block heaters at issue. Whitelaw testified that "Toyota [Canada] maintained design control for these products. So in the initial part, we may have provided them samples, and they ultimately specified on their drawing what is to be built for them."[10] Whitelaw further testified that

> Toyota [Canada] controls the design as to what we ship under their kit. It is product that we make that we've submitted to them. They tell us what clips they want, what dimensions it needs to be, what all the characteristics need to be. They quantify the cord. We consider our role with them more like a design support because, ultimately, they retain design control for their products.[11]

Defendant contends that plaintiff's breach of warranty claims are based on allegations that the design of the block heaters was defective because the block heaters used a 400 watt heater cartridge. Defendant further contends that the choice to use the 400 watt heater cartridge was controlled by Toyota Canada, which means that it will be argue that Toyota Canada is at fault.

Plaintiff questions whether defendant will be able to argue that Toyota Canada is at fault. Plaintiff offers the testimony of Daniel McNaught, who is the business development

---

[10]Deposition of Dennis Whitelaw at 16:15-19, Exhibit 1, Motion to Allocate Fault to Absent Third Party, Exhibit 1, Docket No. 63.

[11]Id. at 137:10-17.

manager for ECC.[12] McNaught testified that "there was a block heater kit that we have been referring to as the 913 which contained a cord and a cartridge. And this is the product that was sold to Toyota Canada. . . ."[13] McNaught testified that at some point, Toyota Canada's "version of the 913 went from the 913 to a kit that had longer silicone wire and a 202 watt heating element, what you referred to as a cartridge."[14] He further testified that there was also a 913 U.S. kit, "which is the Warren kit" and that the decision to use silicone material for the cords on that kit "would have been ECC's."[15] And, although McNaught's testimony is slightly unclear, it appears that he testified that the cartridge part of the 913 kit was designed by ECI.[16] Based on this testimony, plaintiff argues that there is no basis for defendant to argue that fault should be allocated to Toyota Canada.

In order to meet the first requirement necessary to allocate fault to an absent third party, defendant does not have to prove that Toyota Canada is at fault. Rather, defendant only has to identify a non-party that it will argue is at fault. Defendant has done that. It has identified Toyota Canada as a third party that might be at fault. Defendant has met the first requirement necessary to allocate fault to an absent third party.

---

[12]Deposition of Daniel McNaught at 8:2-8, Exhibit 1, Opposition to Warren's Motion to Allocate Fault to Absent Third Party, Docket No. 66.

[13]Id. at 8:20-23.

[14]Id. at 9:19-22.

[15]Id. at 29:11-13.

[16]Id. at 36:7-16.

Defendant argues that it has also met the second requirement necessary to allocate fault to an absent third party because it can show Toyota Canada is outside the jurisdiction of this court. Defendant contends that Toyota Canada cannot be joined as a defendant because the court lacks personal jurisdiction over Toyota Canada.

Alaska's long-arm statute reaches "to the maximum extent permitted by the due process clause of the Fourteenth Amendment[.]" Alaska Telecom, Inc. v. Schafer, 888 P.2d 1296, 1299 (Alaska 1995). "[T]here are two forms that personal jurisdiction may take: general and specific." Picot v. Weston, 780 F.3d 1206, 1211 (9th Cir. 2015).

"[C]ourts have general jurisdiction over a foreign corporation only if the corporation's connections to the forum state 'are so continuous and systematic as to render [it] essentially at home in the forum State.'" Williams v. Yamaha Motor Co., 851 F.3d 1015, 1020 (9th Cir. 2017) (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)). "[I]n the paradigmatic circumstance for exercising general jurisdiction, the corporate defendant is incorporated or has its principal place of business in the forum state." Id. "Only in an 'exceptional case' will general jurisdiction be available anywhere else." Martinez v. Aero Caribbean, 764 F.3d 1062, 1070 (9th Cir. 2014) (quoting Daimler AG v. Bauman, 134 S. Ct. 746, 761 n.19 (2014)).

Defendant argues that this court would not have general jurisdiction over Toyota Canada, which is headquartered in Toronto, Canada, and which, according to its website, has no corporate presence in Alaska. After plaintiff complained that defendant had not offered

any evidence to support its argument, defendant offered the affidavit of James Nolan, one of defendant's attorneys. Nolan avers that he has reviewed Toyota Canada's website; searched the Alaska Corporations database and the Alaska Business Licenses database; did google searches and online searches of local papers in Alaskan towns near the Canadian border; and searched Ingens and the Alaska Recorders Office websites.[17] Nolan avers that "[t]hrough the above searches, I located no information that Toyota of Canada has any presence in the State of Alaska."[18] Nolan's affidavit is sufficient evidence[19] to refute any contention that Toyota Canada is "'essentially at home'" in Alaska. Williams, 851 F.3d at 1020 (quoting Goodyear Dunlop Tires Operations, 564 U.S. at 919)).

As for specific jurisdiction, the court

> employ[s] a three-part test to assess whether a defendant has sufficient contacts with the forum state to be subject to specific personal jurisdiction:
>
> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the

---

[17]Affidavit of James S. Nolan at 2-4, ¶ 2, Docket No. 68.

[18]Id. at 4, ¶ 3.

[19]In a footnote, defendant refers to a 2003 declaration from Dave Nichols, a Toyota Canada employee, which was submitted in a Maine case in which Toyota Canada was challenging personal jurisdiction. Defendant has attached this declaration to its reply. Given the age of this declaration, the court has not relied on it deciding the instant motion.

>defendant's forum-related activities; and
>
>(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Picot, 780 F.3d at 1211 (citation omitted).

Defendant cites to J. McIntyre Machinery, Ltd. v. Nicastro, 564 U.S. 873 (2011), in support of its argument that the court would not have specific jurisdiction over Toyota Canada. There, Nicastro was injured "while using a metal-shearing machine manufactured by J. McIntyre Machinery[.]" Id. at 878. "The accident occurred in New Jersey, but the machine was manufactured in England, where J. McIntyre is incorporated and operates." Id. The question before the Court was "whether the New Jersey courts have jurisdiction over J. McIntyre, notwithstanding the fact that the company at no time either marketed goods in the State or shipped them there." Id. The Court concluded that Nicastro had

>not established that J. McIntyre engaged in conduct purposefully directed at New Jersey. Recall that [Nicastro's] claim of jurisdiction centers on three facts: The distributor agreed to sell J. McIntyre's machines in the United States; J. McIntyre officials attended trade shows in several States but not in New Jersey; and up to four machines ended up in New Jersey. The British manufacturer had no office in New Jersey; it neither paid taxes nor owned property there; and it neither advertised in, nor sent any employees to, the State. Indeed, after discovery the trial court found that the "defendant does not have a single contact with New Jersey short of the machine in question ending up in this state." App. to Pet. for Cert. 130a. These facts may reveal an intent to serve the U.S. market, but they do not show that J. McIntyre purposefully availed itself of the New Jersey market.

Id. at 886.

Defendant argues that the same is true of Toyota Canada, that it did not engage in any forum-related activities or have any contacts of any kind in Alaska, other than a product that it designed may have ended up in Alaska. Defendant insists that there is no evidence that suggests that Toyota Canada directed the sale of Canadian-designed block heaters toward the State of Alaska. Defendant insists that the evidence shows that ECC manufactured and sold the United States block heaters to defendant and that defendant in turn sold the heaters to plaintiff. Thus, defendant argues that the court would not have specific jurisdiction over Toyota Canada.

Defendant has not shown that the court would lack specific personal jurisdiction over Toyota Canada. There is evidence from which at least an inference can be drawn that Toyota Canada provided explicit permission to ECI to sell the block heaters in Alaska. McNaught testified that plaintiff "insisted on having a product that was more similar to what Toyota Canada was marketing"[20] And, Whitelaw testified that at some point he "was told that Toyota Canada had provided permission to ECI for us to sell the final kit to Warren Distribution, provided we did not use their part number on it. . . . [W]e were able to sell them the cord that had been designed by Toyota and the heater that had been specified by Toyota."[21] This testimony at least raises a question as to whether Toyota Canada might have

---

[20]McNaught Deposition at 25:5-6, Exhibit 1, Opposition to Warren's Motion to Allocate Fault to Absent Third Party, Docket No. 66.

[21]Whitelaw Deposition at 58:14-22, Exhibit 2, Opposition to Warren's Motion to Allocate Fault to Absent Third Party, Docket No. 66.

purposefully directed activities toward Alaska. The court cannot conclude, based on what is currently before it, that Toyota Canada did not engage in any conduct that was directed toward Alaska. Defendant has not established that Toyota Canada is outside the jurisdiction of this court.[22] Thus, defendant has not met the second requirement necessary to allocate fault to an absent third party.

Defendant contends that denying its motion and making it go through the expense of attempting to join Toyota Canada as a party will be an exercise in futility. Defendant suggests that Toyota Canada will undoubtedly attempt to get out of this litigation if defendant attempts to bring it in. That may be, but if defendant wants to argue that Toyota Canada is at fault for the allegedly defective design of the engine block heaters in question, it must first attempt to join Toyota Canada as a third party defendant. If that attempt fails, defendant may renew the instant motion.

## Conclusion

Based on the foregoing, defendant's motion to allocate fault to an absent third party is denied. Plaintiff's motion for oral argument is also denied.

DATED at Anchorage, Alaska, this 14th day of February, 2020.

/s/ H. Russel Holland
United States District Judge

---

[22]Defendant's contention that the burden has shifted to plaintiff to show thta the court has personal jurisdiction of Toyota Canada is not well taken. Defendant has moved to allocate fault to an absent third party. Defendant has the burden of showing that Toyota Canada is outside the jurisdiction of the court.