Marc G. Wilhelm
Daniel T. Quinn
Richmond & Quinn, PC
360 K Street, Suite 200
Anchorage, Alaska 99501
Phone: (907) 276-5727
Fax: (907) 276-2953
mwilhelm@richmondquinn.com
dquinn@richmondquinn.com

Attorneys for Defendant/Third Party Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| KENDALL DEALERSHIP HOLDINGS, LLC,<br><br>       Plaintiff,<br><br> v.<br><br>WARREN DISTRIBUTION, INC. a Nebraska Corporation,<br><br>       Defendant.<br>_____<br>WARREN DISTRIBUTION, INC.,<br><br>   Third-Party Plaintiff,<br><br> v.<br><br>ELECTRICAL COMPONENTS INTERNATIONAL, INC., ELECTRICAL COMPONENTS CANADA, INC., and TOYOTA CANADA, INC.,<br><br>   Third-Party Defendants. | Case No. 3:18-cv-00146-HRH |

**WARREN DISTRIBUTION'S MOTION FOR SUMMARY JUDGMENT REGARDING LIABILITY ISSUES**

Warren Distribution moves for summary judgment on three issues. Because the issues are interrelated, they are brought together in one motion. First, Warren moves for summary judgment on liability on all issues based on lack of evidence. Second, Warren moves for summary judgment, in the alternative, that the model 913-1 block heater was not defective, and Kendall Automotive is not entitled to damages arising out of the installation of that block heater into its vehicles. Third, Warren moves for summary judgment on Kendall's Unfair Trade Practices Act claim.

I.  **Background Information**

This case arises out of the sale of block heaters by Warren Distribution to Kendall Toyota. Kendall claims that the block heaters were defective, either because of a manufacturing defect or because of a design defect. Mr. Shideh submitted a report, which is the subject of a separate motion, that suggested that the block heaters may have contained manufacturing defects. On the other hand, Dave Blewett, Kendall Automotive's CEO and Rule 30(b) witness, claimed that the block heaters were defective because the 400-watt heater cartridge that is inserted into the engine block produced too much heat. E.g., Kendall Deposition at 43-44, 242-43. (Attached as Exhibit A)

The block heaters at issue were manufactured by third party defendant ECC, located in Toronto Canada. ECC produced a block heater for Toyota Canada pursuant to a contract between them for sale to the Canadian market. ECC also sold block heaters to Warren, who is the United States distributor for ECC's block heaters. The model of block heater at

WARREN DISTRIBUTION'S MOTION FOR SUMMARY JUDGMENT REGARDING LIABILITY ISSUES
Kendall Dealership Holdings, LLC v. Warren Distribution, Inc., et al., Case No. 3:18-cv-00146-HRH
Page 2 of 16

Case 3:18-cv-00146-HRH   Document 129   Filed 10/19/20   Page 2 of 16

issue is known as model 913. Warren, in turn, sold this model to Kendall for the period 2014-2017.

By way of background, Kendall originally purchased block heaters from Toyota USA. Around 2014, Toyota USA stopped supplying Kendall block heaters, and requested that Kendall obtain the block heaters through Toyota Canada. Kendall Deposition at 236-37. (Exhibit A) Toyota Canada pointed Kendall to Warren as the source for its block heaters. The block heater that Kendall bought from Warren appears to be the same block heater that Kendall previously purchased through Toyota USA. *Id*. at 237-38.

Toyota Canada issued a recall in Canada with respect to the model 913 block heaters sold in Canada in July 2017. Subsequently, in March 2018, Kendall issued a safety notice to its customers for block heaters sold in Alaska, which included both the model 913 and the 913-1 block heater.

Dan McNaught, ECC's Business Development Manager, testified at his deposition that the model 913 block heater consisted of a cord and a cartridge (the heating element). McNaught Deposition at 8-9. (Attached as Exhibit B). With respect to the Canadian market, Toyota Canada ultimately requested that ECC modify this heater so that the first meter of the cord consisted of silicone wire, which was more heat resistant than the HPN wire it replaced. *See id*. at 9-10, 24, 29. In addition, what was previously a 400-watt cartridge was replaced by a 202-watt cartridge. *Id*. at 10.

The original Model 913 sold in the United States had the same cord and cartridge as the block heater that was sold in Canada. *Id*. at 12. Around March 2017, Toyota Canada

WARREN DISTRIBUTION'S MOTION FOR SUMMARY JUDGMENT REGARDING LIABILITY ISSUES
Kendall Dealership Holdings, LLC v. Warren Distribution, Inc., et al., Case No. 3:18-cv-00146-HRH
Page 3 of 16

Case 3:18-cv-00146-HRH   Document 129   Filed 10/19/20   Page 3 of 16

suspended selling the Canadian version of the product in Canada as a purely precautionary matter, while it was investigating reported thermal events involving the block heater. *See id*. at 14-15, 31. As a precaution, ECC also stopped selling the 913 model to the United States at the same time, around March 2017. *Id*. at 23. Before renewing sales to the United States market, ECC increased the robustness of the heater cord, again as a precautionary measure. *Id*. at 14-15, 23. This involved increasing the portion of the cord covered by silicone to the first six inches from the female end[1] of the cord and adding a fiberglass protective sleeving. *Id*. at 13. This revised model, known as model 913-1, retained the 400-watt cartridge, which McNaught described as the standard in the industry. *Id*. Order records show that the first order of 913-1 block heaters was shipped in July or August. See Exhibit C.

Kendall ultimately insisted that the model it was going to use had to be identical to the revised model that was being sold in Canada. *Id*. at 25. This new model – which is essentially the same model that Toyota Canada uses – is known in the United States as model 913-2. *Id*. at 26. All block heaters sold after March 2018 were model 913-2.

Plaintiff's complaint alleges that the block heaters it complains of were improperly manufactured due either a short circuit in the electrical cord and/or too much wattage produced by the engine block heaters. Complaint, ¶ 11. It complains that Warren continued to sell the Pyroil [ECC] engine block heater to Kendall after Warren knew or

---

[1] The female end of the cord plugs into the cartridge. The male end of the cord extrudes from under the hood, where it can be connected to an electrical outlet.

WARREN DISTRIBUTION'S MOTION FOR SUMMARY JUDGMENT REGARDING LIABILITY ISSUES
Kendall Dealership Holdings, LLC v. Warren Distribution, Inc., et al., Case No. 3:18-cv-00146-HRH
Page 4 of 16

Case 3:18-cv-00146-HRH   Document 129   Filed 10/19/20   Page 4 of 16

should have known the block heater was defective. *Id*. at ¶ 15. It further claims that Warren committed unfair acts in violation of the Unfair Trade Practices Act because it falsely represented the engine block heaters were build to standards that they were not. *Id*. at ¶ 22. In addition, in interrogatory responses, Kendall claims that Warren and ECC incorrectly told them that the block heaters with the cord modification made the block heaters safe. See Exhibit D at 2-3.

Mr. Blewett, as Kendall's rule 30(b) witness, stated that the basis of Kendall's claim was that the wattage of the block heater cartridge was too high. Kendall deposition at 54-55, 78-79. (attached as Exhibit A). Kendall determined to go to the 913-2, with the lower wattage cartridge, "basically as a precautionary measure." *Id*. at 82. Kendall's position is that the use of the 400-watt block heater cartridge made the block heater defective. *Id*. at 75-78. Kendall further agreed that it had no issues with the 913-1 cord. *Id*. at 79. Kendall has not done any independent testing of the block heaters. *Id*. at 52. Rather, it relies on statements that representatives of Toyota USA made to Mr. Blewett for its claim that the wattage of the block heater was too high. *Id*. at 53.

## II. **Summary Judgment Standard**

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The burden of showing the absence of a genuine dispute of material fact lies with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2505 (1986). If the moving party meets this burden, the non-moving party

WARREN DISTRIBUTION'S MOTION FOR SUMMARY JUDGMENT REGARDING LIABILITY ISSUES
Kendall Dealership Holdings, LLC v. Warren Distribution, Inc., et al., Case No. 3:18-cv-00146-HRH
Page 5 of 16

Case 3:18-cv-00146-HRH   Document 129   Filed 10/19/20   Page 5 of 16

must present specific factual evidence demonstrating the existence of a genuine issue of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49, 106 S. Ct. 2505 (1986). The non-moving party may not rely on mere allegations or denials. It must demonstrate that enough evidence supports the alleged factual dispute to require a finder of fact to make a determination at trial between the parties' differing versions of the truth. *Millo v. Delius*, 872 F.Supp.2d 867, 871–72 (D. Alaska 2012).

The moving party must first demonstrate that it is entitled to summary judgment. *Celotex*, 477 U.S. at 323. The moving party has the initial burden of identifying the elements of the claim or defense and evidence that it believes demonstrates the absence of an issue of material fact. *Id*. Where the moving party does not bear the burden of proof at trial, it can meet that burden by showing that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

Accordingly, where the non-moving party has the burden of proof at trial, the moving party is not required to produce evidence negating or disproving every essential element of the non-moving party's case. Instead, the moving party's burden is met by pointing out that there is an absence of evidence supporting the non-moving party's claim. *Celotex*, 477 U.S. at 323. The burden then shifts to the non-moving party to show that there is a genuine issue of material fact that must be resolved at trial. The non-moving party must make an affirmative showing on all matters placed in issue by the motion as to

WARREN DISTRIBUTION'S MOTION FOR SUMMARY JUDGMENT REGARDING LIABILITY ISSUES
<u>Kendall Dealership Holdings, LLC v. Warren Distribution, Inc., et al.</u>, Case No. 3:18-cv-00146-HRH
Page 6 of 16

Case 3:18-cv-00146-HRH   Document 129   Filed 10/19/20   Page 6 of 16

which it has the burden of proof at trial. *Id.*; *Anderson*, 477 U.S. at 252. *See also Alaska Stock, LLC v. Pearson Educ., Inc.*, 975 F.Supp.2d 1027, 1033 (D. Alaska 2013).

As noted by the Supreme Court:

> We find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim. On the contrary, Rule 56(c), which refers to "the affidavits, *if any*" (emphasis added), suggests the absence of such a requirement. And if there were any doubt about the meaning of Rule 56(c) in this regard, such doubt is clearly removed by Rules 56(a) and (b), which provide that claimants and defendants, respectively, may move for summary judgment "*with or without supporting affidavits*" (emphasis added). The import of these subsections is that, regardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied. One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S. Ct. 2548, 2553 (1986).

Once the moving party has met its burden, the burden shifts to the non-moving party to present admissible evidence showing there are disputed facts that require a trial. To reach the level of a genuine dispute, the evidence must be such as "would allow a reasonable fact-finder to return a verdict for the non-moving party." *Millo*, 872 F.Supp.2d at 871. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." If the evidence provided by the non-moving party is "merely colorable" or "not significantly probative," summary judgment is appropriate. *Id.* at 872.

WARREN DISTRIBUTION'S MOTION FOR SUMMARY JUDGMENT REGARDING LIABILITY ISSUES
Kendall Dealership Holdings, LLC v. Warren Distribution, Inc., et al., Case No. 3:18-cv-00146-HRH
Page 7 of 16
Case 3:18-cv-00146-HRH   Document 129   Filed 10/19/20   Page 7 of 16

### III. Warren Is Entitled to Summary Judgment on the Issue of Product Defect

The undisputed testimony is that none of the block heaters that Warren sold Kendall were defective. Mr. Dare is the Quality Manager for ECC, whose job it was to oversee the manufacturing of the model 913 block heater. Dare Deposition at 11. (Attached as Exhibit E). He testified that testing of the block heater by ECC and Toyota Canada did not locate a product defect.

Mr. Dare discussed that Toyota approached ECC in early 2017 because they had concerns that there might be a manufacturing defect with the product. Toyota and ECC tested over 100 block heater cords that had been sent to dealers. *Id.* at 24. Some anomalies were initially noted with the block heaters, and then tests were designed to recreate those anomalies to see whether they would lead to failure. The tests could not recreate any failures under normal conditions, or a root cause of the thermal events that were being investigated. *Id.* at 25-26. The cords failed only when exposed to 150 degrees Celsius, which was far above the product's rated temperature. *Id.* at 28. ECC did work with Toyota to make changes to its manufacturing process, but the manufacturing process was not found to be the cause of any thermal events. *Id.* at 78.

Mr. Dare stated that after this testing, "we [Toyota Canada and ECC] realized that everything that was observed in the manufacturing process that could be considered an issue or concern didn't really play a factor a -- as a factor in the thermal events." *Id.* at 55-56. Ultimately, the minor manufacturing anomalies were a "non-issue":

> Q. So is that -- for example, you went through sort of the four things we talked about earlier, the concerns that they had that identified with the --

WARREN DISTRIBUTION'S MOTION FOR SUMMARY JUDGMENT REGARDING LIABILITY ISSUES
Kendall Dealership Holdings, LLC v. Warren Distribution, Inc., et al., Case No. 3:18-cv-00146-HRH
Page 8 of 16

Case 3:18-cv-00146-HRH   Document 129   Filed 10/19/20   Page 8 of 16

> the crimping and the -- well, I'm going to use, perhaps, not the exact right terminology here, but -- the terminating, the slitting process, and those four or more things, those things became a non-issue at that point then?
>
> A. That's correct.
>
> Q. So at this point, was there any conclusion reached as to how the thermal events occurred in the field?
>
> A. There was no root cause.

*Id*. at 56. Toyota Canada in fact stated to Mr. Dare that "They couldn't figure out a root cause." *Id*. At 60. Mr. Dare further testified that the parts passed all tests and were safe, and the parts performed as intended under normal conditions. *Id*. at 138-141. It was a safe product that met all requirements and design specifications. *Id*. at 141. He confirmed that there were no problems with the block heaters that would cause thermal events. *Id*. at 143-144. He further stated that ECC could find no evidence that there was any manufacturing process issues with respect to the block heaters. *Id*. at 140. Based on his investigation and experience, there was not a manufacturing or design defect in the 913 block heaters. *Id*. at 142.

Duncan Whitelaw is the advance design engineer and manager for ECC. Whitelaw Deposition at 9-10. (attached as Exhibit F). He similarly testified that the model 913 block heater was a good and safe product, fit for the application for which it was designed, and that the testing performed by ECC and Toyota Canada found no evidence of a manufacturing defect. *Id*. at 140-141. It was his opinion that the product had neither a manufacturing or design defect. *Id*. at 142.

WARREN DISTRIBUTION'S MOTION FOR SUMMARY JUDGMENT REGARDING LIABILITY ISSUES
Kendall Dealership Holdings, LLC v. Warren Distribution, Inc., et al., Case No. 3:18-cv-00146-HRH
Page 9 of 16

Case 3:18-cv-00146-HRH   Document 129   Filed 10/19/20   Page 9 of 16

Dan McNaught of ECC, who also had some familiarity with Toyota Canada testing of the 913 block heater, similarly testified:

> Q. So, moving back to the conversations that you had with Toyota Canada or that you sat in on, what is it you recall that they raised as concerns? Can you tell me what was discussed during that meeting?
>
> A. Just the fact that they had what they saw as . . . as a spike in those seven instances in Western Canada, they all came relatively close together and because of their geographic area, it showed up and caused a blip on their radar. And because they were . . . they were being overly cautious these days because of the previous issues they had with floor mats, for instance, and the harm that did to their reputation, so they were being overly cautious and they didn't want to . . . they didn't want a repeat of the same situation, so . . . but having said that, they only saw it as a blip on the radar. They want to know . . . work with us. It was very proactive. It was a collaborative relationship. They wanted to work with us to see what, if anything, was the cause for those seven instances. Unfortunately, they were unable to find any root cause or reproduce it.
>
> Q. Toyota Canada?
>
> A. Yes.
>
> Q. And how did you learn that?
>
> A. Just through final discussions. There is no root cause . . . there was no root cause mentioned in the recall.

McNaught Depo. at 18-19; *see also id*. at 19-20. (Attached as Exhibit B). The cause of the Canadian events was never determined. *Id*. at 30-31

The ECC depositions also confirmed that ECC had multiple manufacturing processes in place in 2016 to prevent product defects. Dare Dep. at 136-137. (Attached as Exhibit E). In particular, each cord was subjected to a "high potential" test where the cord was charged up with 1500 volts. This high potential test locates if there are any potential

WARREN DISTRIBUTION'S MOTION FOR SUMMARY JUDGMENT REGARDING LIABILITY ISSUES
Kendall Dealership Holdings, LLC v. Warren Distribution, Inc., et al., Case No. 3:18-cv-00146-HRH
Page 10 of 16
Case 3:18-cv-00146-HRH   Document 129   Filed 10/19/20   Page 10 of 16

short circuits in the cord and confirm that the cord will perform as intended. *Id*. at 137, 140. Mr. Dare further explained, even assuming some anomaly with crimping or a loose wire strand, that could not cause a short, because the crimps and wiring are all encased in silicone, which is an excellent insulator. *Id*. at 139-40.

Warren Distribution is entitled to summary judgment on Kendall claims that the 400-watt cartridge is defective because it produces too much heat. Neither Kendall nor its expert, Mr. Shideh, conducted any testing that might confirm that this to be the case. Nor does Mr. Shideh's report even discuss the issue of cartridge wattage. Kendall's sole basis for this claim are hearsay statements from employees at Toyota USA that the 400-watt heater was too hot. Because Kendall has no basis or support for this claim, Warren is entitled to summary judgment.

Warren is also entitled to summary judgment on the issue of manufacturing defect. The deposition testimony that Warren discusses above establishes that the block heaters did not have a manufacturing defect. Any possible support for a manufacturing defect claim would need to come from its expert, Sean Shideh. But for the reasons stated in the motion to strike Mr. Shideh as a witness filed concurrently with this motion, Mr. Shideh is not entitled to testify on this subject. Without his testimony, there is thus no evidence that block heaters at issue had a manufacturing defect.

Kendall's entire complaint is based on the foundation that a product defect existed. Because Warren is entitled to summary judgment on Kendall's claim that the block heaters were defective, it is entitled to summary judgment dismissing Kendall's entire complaint.

WARREN DISTRIBUTION'S MOTION FOR SUMMARY JUDGMENT REGARDING LIABILITY ISSUES
Kendall Dealership Holdings, LLC v. Warren Distribution, Inc., et al., Case No. 3:18-cv-00146-HRH
Page 11 of 16

Case 3:18-cv-00146-HRH   Document 129   Filed 10/19/20   Page 11 of 16

## IV. In the Alternative, Warren Is Entitled to Summary Judgment on the Question Whether the Model 913-1 Block Heater Was Defective.

While Warren is entitled to summary judgment on all liability issues, in the alternative, Warren is entitled to summary judgment on whether the model 913-1 block heater was defective. First, Mr. Shideh's report only suggests manufacturing issues during the period of 2016 and early 2017. See Exhibit G at 4. His report only discusses the model 913 block heater and does not discuss or opine on the Model 913-1 heater, which was not manufactured and sold until a later date. In addition, Kendall agreed at its deposition that it did not have issues with the 913-1 cord.

Kendall may argue that the 913-1 was defective because is continued to use a 400-watt cartridge. But as discussed above, Kendall has conducted no testing and produced no expert report that the 400-watt cartridge was the cause of any thermal events or fires, or that it was defective in any way. Rather, as discussed above, a 400-watt cartridge is standard in the industry.

Accordingly, in the alternative Warren is entitled to summary judgment that the model 913-1 block heater was defective.

## V. Warren Distribution Is Entitled to Summary Judgment on Kendall's Unfair Trade Practices Claims

Warren is also entitled to summary judgment on Kendall's claims under the Alaska's Unfair Trade Practices Act. *See* AS 45.50.471 et seq. None of Warren's actions, or indeed the actions of ECC, violated the act.

WARREN DISTRIBUTION'S MOTION FOR SUMMARY JUDGMENT REGARDING LIABILITY ISSUES
Kendall Dealership Holdings, LLC v. Warren Distribution, Inc., et al., Case No. 3:18-cv-00146-HRH
Page 12 of 16

Case 3:18-cv-00146-HRH   Document 129   Filed 10/19/20   Page 12 of 16

Kendall complains first that Warren continued to sell it the model 913 block heater after being aware of the Canadian recall. As discussed above, this is not correct. The Toyota Canada recall was in July 2017. ECC and Warren had previously stopped selling the model 913 block heater as of March 2017. ECC then redesigned the block heater as a precaution to make it a more robust product. There were no sales of the model 913 block heater after March 2017.

Kendall also complains that Warren and ECC incorrectly told them that the block heaters with the cord modification made the block heaters safe. This claim fails for two reasons. First, the discussions referred to, which occurred at the end of February or early March 2018, related to the model 913-1 block heater. Warren is attaching a discussion between the parties that occurred contemporaneously with the phone discussions. See Exhibit H. Mr. Blewett testified that he spoke to Mr. O'Conner of Warren around the time of this email correspondence. Kendall Deposition at 250-53; *see also id*. at 35-38. He recalls Mr. O'Conner telling him that the 400-watt cartridge was safe. *Id*. at 58-59. But because of what Mr. Blewett heard from Toyota USA around the same time, *id*. at 63, Kendall chose to go with the Canadian solution, and to stop using the 913-1 block heater. It issued its safety notice in early March 2018. Exhibit I.

As to this claim, Kendall has produced no evidence that the 913-1 was unsafe, or that any statement Warren made was incorrect. Because Kendall cannot show that Warren made a false statement, this claim must fail.

WARREN DISTRIBUTION'S MOTION FOR SUMMARY JUDGMENT REGARDING LIABILITY ISSUES
Kendall Dealership Holdings, LLC v. Warren Distribution, Inc., et al., Case No. 3:18-cv-00146-HRH
Page 13 of 16

Case 3:18-cv-00146-HRH   Document 129   Filed 10/19/20   Page 13 of 16

A claim for damages under the Unfair Trade Practices Act is a claim under AS 45.50.531(a). A section .531 claim for damages requires proof of causation, i.e., plaintiff must have suffered a loss "as a result of" defendant's actions. Section .531's causation mandate requires the plaintiff prove that it "suffer[ed] an ascertainable loss of money or property as a result of another person's act or practice declared unlawful by AS 45.50.471." Without a causal connection between the violation and actual damages, there is no right to monetary relief. *See generally Smallwood v. Central Peninsula General Hospital*, 151 P.3d 319 (Alaska 2006); *Garrison v. Dixon*, 19 P.3d 1229 (Alaska 2001).

Thus, in *Smallwood*, the Alaska court implicitly held that actual damages were a requirement to bring a claim under .531. It found that plaintiff, who admitted he was not damaged, did not have a cause of action under that section. *Smallwood v. Central Peninsula General Hosp.*, 151 P.3d 319, 329 (Alaska 2006). Similarly, the Court confirmed in *Garrison* that a plaintiff was required to show monetary losses to bring a claim under .531. *Garrison v. Dixon*, 19 P.3d 1229, 1235 n.22 (Alaska 2001).

Admittedly, neither of these cases directly addressed the statute's "as a result of" language. But case law nationally makes clear that, at a minimum, "but for" causation is required under damages provisions such as the one in Alaska's unfair trade practices statute. D. Pridgen & R. Alderman, *Consumer Protection and the Law* § 6.3 (2016). The majority rule is that plaintiffs must show damages arising out of reliance on a misleading statement. *Id*. For example, the fact that a seller of mobile homes was not licensed to sell insurance as required by law was not actionable, given that no damages arose out of the

WARREN DISTRIBUTION'S MOTION FOR SUMMARY JUDGMENT REGARDING LIABILITY ISSUES
Kendall Dealership Holdings, LLC v. Warren Distribution, Inc., et al., Case No. 3:18-cv-00146-HRH
Page 14 of 16
Case 3:18-cv-00146-HRH   Document 129   Filed 10/19/20   Page 14 of 16

lack of licensing.  *Chavarria v. Fleetwood Retail Corp. of New Mexico*, 115 P.3d 799, 810 (N.M. App. 2005), partially reversed on other grounds, 143 P.3d 717 (N.M. 2006).

Here, there is not reliance on any statements that Warren may have made that the 400-watt heater was safe.  Kendall did not rely on any statements made by Warren or ECC.  Rather, it relied on statements made by Toyota USA regarding the product in making its recall decisions.  Thus, Kendall does not meet the causation requirement under AS 45-.50.531.

Conclusion

For the above reasons, Warren is entitled to summary judgment.

DATED this 19th day of October, 2020 at Anchorage, Alaska.

           RICHMOND & QUINN

           By /s/ Marc G. Wilhelm
              Marc G. Wilhelm, ABA 8406054
              mwilhelm@richmondquinn.com
              360 K Street, Suite 200
              Anchorage, AK  99501
              Ph:  (907) 276-5727
              Fax:  (907) 276-2953

              Attorneys for Defendant and
              Third-Party Plaintiff

WARREN DISTRIBUTION'S MOTION FOR SUMMARY JUDGMENT REGARDING LIABILITY ISSUES
Kendall Dealership Holdings, LLC v. Warren Distribution, Inc., et al., Case No. 3:18-cv-00146-HRH
Page 15 of 16

Case 3:18-cv-00146-HRH   Document 129   Filed 10/19/20   Page 15 of 16

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 19th day of October, 2020, a copy of the foregoing was served electronically on the following:

Gary C. Sleeper
Allison G. Strickland
Kendra E. Bowman
Jermain, Dunnagan & Owens, P.C.
3000 A Street, Suite 300
Anchorage, AK 99503
gcsleeper@jdolaw.com
astrickland@jdolaw.com
kbowman@jdolaw.com

Cynthia L. Ducey
Ducey & Associates LLC
745 W. 4th Avenue, Suite 425
Anchorage, AK 99501
cld@duceylawak.com

/s/ Marc G. Wilhelm
RICHMOND & QUINN

I:\2199\2199.029\PLD\WARREN SJ MOTION.docx

WARREN DISTRIBUTION'S MOTION FOR SUMMARY JUDGMENT REGARDING LIABILITY ISSUES
Kendall Dealership Holdings, LLC v. Warren Distribution, Inc., et al., Case No. 3:18-cv-00146-HRH
Page 16 of 16
Case 3:18-cv-00146-HRH   Document 129   Filed 10/19/20   Page 16 of 16