Gary C. Sleeper
Allison G. Strickland
Kendra E. Bowman
JERMAIN, DUNNAGAN & OWENS, P.C.
3000 A Street, Suite 300
Anchorage, AK 99503
Telephone: (907) 563-8844
Facsimile: (907) 563-7322
gcsleeper@jdolaw.com
astrickland@jdolaw.com
kbowman@jdolaw.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| KENDALL DEALERSHIP HOLDINGS, LLC,<br><br>                        Plaintiff,<br><br>vs.<br><br>WARREN DISTRIBUTION, INC., a Nebraska Corporation,<br><br>                        Defendant. | Case No. 3:18-CV-00146 HRH |
| WARREN DISTRIBUTION, INC.,<br><br>                        Third Party Plaintiff,<br><br>vs.<br><br>ELECTRICAL COMPONENTS INTERNATIONAL, INC., and ELECTRICAL COMPONENTS CANADA, INC.,<br><br>                        Third Party Defendants. | |

# KENDALL DEALERSHIP HOLDINGS, LLC'S OPPOSITION TO WARREN DISTRIBUTION INC.'S MOTION FOR SUMMARY JUDGMENT REGARDING LIABILITY ISSUES

For the second time, Warren Distribution, Inc. ("Warren") moves this court for summary judgment regarding liability in the instant action. If the following arguments appear familiar, it is because this court has addressed this issue before in Warren's Motion for Summary Judgment lodged in July of 2019. The Court denied Warren's Motion finding that "Plaintiff has come forward with sufficient circumstantial evidence to survive defendant's motion for summary judgment."[1] In the eighteen months since deciding that motion, the only difference now is a factual disputes following discovery. Given that there remains genuine issues of facts regarding liability, Warren is not entitled to summary judgment. Kendall Dealership Holdings, LLC ("Kendall") requests this Court deny Warren's motion.

## I. Factual Background

Kendall provides a detailed outline of the factual background regarding this lawsuit in its Opposition to Motion in Limine to Exclude Testimony of Expert Sean Shideh, incorporated herein by reference. Additional pertinent facts to the underlying motion are as follows.

Electrical Components Canada/Electrical Components International ("ECI") manufactured the block heater at issue in this litigation identified as the 913. The

---

[1] Dkt 54.

{01068636}
**KENDALL DEALERSHIP HOLDINGS, LLC'S OPPOSITION TO WARREN DISTRIBUTION INC.'S MOTION FOR SUMMARY JUDGMENT REGARDING LIABILITY ISSUES**
*Kendall Dealership Holdings, LLC v. Warren Distribution, Inc.;* Case No. 3:18-cv-00146 HRH
Page 2 of 17

913 is a kit consisting of a cord and a cartridge heater.[2] ECI sold the same 913 kit to Toyota Canada and to Warren. The 913 kits sold to Warren were the same kits sold to Toyota Canada with the only difference being the addition of cable ties in the package sold to Warren.[3] Warren in turn sold the 913 kit to Kendall, and Kendall installed the 913 kits in every vehicle it sold until late 2017/early 2018.

In March of 2017, Toyota Canada informed ECI that they had concerns with the 913. Specifically, they had at least seven known vehicles that caught on fire due to the 913 engine block heater.[4] Toyota Canada informed ECI in March of 2017 that they thought there was a manufacturing defect with the product.[5] Toyota Canada immediately placed a stop order on their purchase of 913 kits, and launched an investigation.

Around the same time, Warren had placed an order with ECI for additional 913 kits. ECI placed Warren's order on hold while ECI "created a new… more robust design."[6] ECI explained to Warren that information received from Toyota Canada "indicated that they may have an issue with their 2016 and 2017 models at the time….But just as a proactive effort, [ECI] increased the robustness of the cord set."[7] ECI informed Mike Beck and Jimmy O'Connor of Warren about the

---

[2] *See,* **Exhibit 1, Deposition of Duncan Whitelaw at p. 2.**
[3] *See,* **Exhibit 1 at p. 2-3.**
[4] *See,* **Exhibit 2, Toyota Canada Quality Case Disclosures, at p. 1.**
[5] *See,* **Exhibit 3, Deposition of Josh Dare at p. 2.**
[6] *See,* **Exhibit 4, Deposition of Daniel McNaught at p. 2.**
[7] *See,* **Exhibit 4 at p. 2.**

{01068636}
**KENDALL DEALERSHIP HOLDINGS, LLC'S OPPOSITION TO WARREN DISTRIBUTION INC.'S MOTION FOR SUMMARY JUDGMENT REGARDING LIABILITY ISSUES**
*Kendall Dealership Holdings, LLC v. Warren Distribution, Inc.;* Case No. 3:18-cv-00146 HRH
Page 3 of 17

modifications, and the concerns regarding the 913.[8] Warren assumed the modifications to the 913 cord was "based off safety."[9]

ECI modified the 913 cord to incorporate a 6-inch piece of silicone wire between the HPN wire and the molded silicone plug that connects to the heater cartridge. Additionally, they changed the sleeving from PVC to fiberglass.[10] This new designed kit was given part number 913-1. The original PVC tubing had a temperature rating of 125 degrees Celsius. The new fiberglass sleeve has a temperature rating of 200 degrees Celsius.[11] The original HPN wiring has a temperature rating of 105 degrees Celsius.[12] The new silicone is temperature rated to 200 degrees Celsius.[13] In essence, it could withstand more heat.

Even though Warren and ECI knew that the 913 was dangerous in March of 2017, they did not tell Kendall that the 913 was dangerous, and they did not tell Kendall to stop installing the 913 into its vehicles, nor did they tell Kendall to remove the dangerous 913 from vehicles it had installed them in. Instead, Warren continued to sell Kendall the defective 913. Then, and without any indication as to why, they modified the 913. Warren started distributing the 913-1 to Kendall in August of 2017.[14] ECI did not sell the 913-1 to Toyota Canada.

---

[8] *See,* **Exhibit 4 at p. 3.**
[9] *See,* **Exhibit 5, Deposition of Kristie Cook, at p. 8.**
[10] *See,* **Exhibit 1 at p.** 4.
[11] *See,* **Exhibit 1 at pp. 5-6.**
[12] *See,* **Exhibit 3 at pp. 3-4.**
[13] *See,* **Exhibit 3 at p. 5.**
[14] *See,* **Exhibit 6, Warren Invoices, at p. 3**; *See,* **Exhibit 7, Deposition of Craig Cassie, at p.3.**

{01068636}
**KENDALL DEALERSHIP HOLDINGS, LLC'S OPPOSITION TO WARREN DISTRIBUTION INC.'S MOTION FOR SUMMARY JUDGMENT REGARDING LIABILITY ISSUES**
*Kendall Dealership Holdings, LLC v. Warren Distribution, Inc.;* Case No. 3:18-cv-00146 HRH
Page 4 of 17

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

On July 20, 2017, the Government of Canada issued a safety recall of the 913. The recall stated "some dealer installed block heaters may have been improperly manufactured, causing the wires to contact each other, resulting in a short circuit. A short circuit could lead to a fire which would increase the risk of injury and/or damage to property."[15]

Within a month of its issuance, Warren became aware of the Canadian recall.[16] Warren contacted ECI to determine if the recall related to the products ECI sold to Warren, and ECI told Warren that the recall did not pertain to the Warren products.[17] ECI told Warren the 913 US was different than the Toyota Canada block heater.[18] As we know, however, the 913 was the same cord and heater cartridge kit sold in both Canada and the US market.

In the interim, ECI and Toyota Canada continued working on a 'countermeasure' to the defective 913. In either December 2017 or January 2018, ECI began distributing the countermeasure kit, part 913-2.[19] This kit contained a 202 watt heater with a more intensively modified cord that had one meter (or just over 3 feet) of silicone instead of the 6 inches that were on the 913-1.[20] The lower watt heater produces less heat, and the silicone material can withstand more heat.

---

[15] *See,* **Exhibit 8, Transport Canada recall documents.**
[16] *See,* **Exhibit 5 at p. 3.**
[17] *See,* **Exhibit 5 at p. 4.**
[18] *See,* **Exhibit 5 at pp. 6-7.**
[19] *See,* **Exhibit 1 at pp. 9-10.**
[20] *See,* **Exhibit 1 at pp. 7-8.**

{01068636}
**KENDALL DEALERSHIP HOLDINGS, LLC'S OPPOSITION TO WARREN DISTRIBUTION INC.'S MOTION FOR SUMMARY JUDGMENT REGARDING LIABILITY ISSUES**
*Kendall Dealership Holdings, LLC v. Warren Distribution, Inc.;* Case No. 3:18-cv-00146 HRH
Page 5 of 17
Case 3:18-cv-00146-HRH   Document 162   Filed 11/20/20   Page 5 of 17

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

After having several vehicle fires involving the 913, Kendall's CEO Dave Blewett began doing research and making calls, which ultimately led to Kendall learning about the Canadian recall of the 913.[21] The initial information he learned was that there was a problem with the cords on the 913. Subsequently, Toyota USA informed Mr. Blewett that there was a problem with the wattage of the heater producing too much heat.[22] Mr. Blewett learned that a second modification to the 913 was being designed for Toyota Canada, and this second modification, known as the 913-2, used a 202 Watt heater instead of the 400 Watt heater.

Throughout this litigation, Warren and ECI claim that testing was unable to recreate the fires/thermal events. This is not true, and the evidence produced by ECI, including deposition testimony, is to the contrary. While ECI and Warren both told Kendall the 913 heaters were safe,[23] and that the modification to the cord (913-1 model) was simply a precaution,[24] curiously, Mr. McNaught claims he would have told Mr. Blewett that the "the 913 was not to be used on 2016 and 2017 and 2018 model year vehicles."[25] When Mr. Blewett inquired about the heater wattage, ECI told him there was nothing in the testing that suggested the 400 Watt heater was unsafe, but reducing the heater to 202 Watts was a precaution taken by Toyota Canada.

---

[21] *See,* **Exhibit 9, deposition of Dave Blewett at pp. 5-6.**
[22] *See,* **Exhibit 9 at pp. 7-9.**
[23] *See,* **Exhibit 5 at p. 5; see also Exhibit 9 at p. 4**.
[24] *See,* **Exhibit 9 at p. 4.**
[25] *See,* **Exhibit 4 at p. 4.**

{01068636}
**KENDALL DEALERSHIP HOLDINGS, LLC'S OPPOSITION TO WARREN DISTRIBUTION INC.'S MOTION FOR SUMMARY JUDGMENT REGARDING LIABILITY ISSUES**
*Kendall Dealership Holdings, LLC v. Warren Distribution, Inc.;* Case No. 3:18-cv-00146 HRH
Page 6 of 17
Case 3:18-cv-00146-HRH   Document 162   Filed 11/20/20   Page 6 of 17

When deciding to issue the urgent safety notice in March 2018, Mr. Blewett understood the 913 was defective due to the cord material and size, and the heater wattage.[26] Indeed while ECI continues to claim the countermeasure product created for Toyota Canada (kit 913-2) was a "precautionary measure," Kendall understood that the modification in the cord and reduction of the wattage was the solution (i.e. countermeasure) to the defective product.[27] Following discovery in the instant litigation, Kendall learned that a combination of issues contributed to the defect in the 913 and 913-1. Specifically, the cord material was deficient, the wattage was too high, and the manufacturing process, including crimping, was defective.[28]

While Warren and ECI claim there is no defect in either the 913 or the 913-1, the evidence does not support this position. These are precisely the material facts that a jury should decide.

## II. Discussion

### A. Summary judgment standard

A party is only entitled to summary judgment if the Court finds that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[29] A dispute over

---

[26] *See,* **Exhibit 9 at p. 3-4.**
[27] *See,* **Exhibit 9 at p. 10.**
[28] *See,* **Exhibit 10, Kendall's Supplemental Responses to Warren's Second Set of Discovery Requests.**
[29] FRCP 56(c).

{01068636}
**KENDALL DEALERSHIP HOLDINGS, LLC'S OPPOSITION TO WARREN DISTRIBUTION INC.'S MOTION FOR SUMMARY JUDGMENT REGARDING LIABILITY ISSUES**
*Kendall Dealership Holdings, LLC v. Warren Distribution, Inc.;* Case No. 3:18-cv-00146 HRH
Page 7 of 17

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

a material fact exists if the evidence would allow a reasonable fact-finder to return a verdict for the non-moving party.[30] The non-moving party may defeat judgment by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial.[31] "The plaintiff, to survive the defendant's motion, need only present evidence from which a jury might return a verdict in his favor. If he does so, there is a genuine issue of fact that requires a trial." [32]

### B. Alaska State Substantive Law Applies

In diversity cases, a federal court must conform to state law to the extent mandated by the principles set forth in the seminal case of *Erie R.R. v. Tompkins*.[33] Pursuant to *Erie* and its progeny, federal courts sitting in diversity apply state substantive law and federal procedural law.[34]

### C. Kendall provides evidence of a defect

There is not, as Warren suggests, undisputed testimony that the block heaters Warren sold to Kendall were not defective. Indeed the evidence of a defect is overwhelming. That ECI conducted testing and was not able to find a 'root cause' of the fires is certainly not the same as determining there was no defect in the block heaters.

---

[30] *See Anderson v Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[31] *Celotex Corp. v Catrett*, 477 U.S. 317, 322 (1986).
[32] *Anderson v. Liberty Lobby, Inc., ante*, at 257.
[33] 304 U.S. 64 (1938).
[34] *Feldman v. Allstate Ins. Co*., 322 F.3d 660, 666 (9th Cir. 2003) *citing Erie*, 304 U.S. at 78; *Wray v. Gregory*, 61 F.3d 1414, 1417 (9th Cir.1995).

{01068636}
**KENDALL DEALERSHIP HOLDINGS, LLC'S OPPOSITION TO WARREN DISTRIBUTION INC.'S MOTION FOR SUMMARY JUDGMENT REGARDING LIABILITY ISSUES**
*Kendall Dealership Holdings, LLC v. Warren Distribution, Inc.;* Case No. 3:18-cv-00146 HRH
Page 8 of 17

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

Indeed, the testimony of expert Sean Shideh, as discussed in detail in oppositions to defendants Joint Motion in limine to exclude Sean Shideh and Joint Motion to Strike, is that the fires were caused by a manufacturing defect in the assembly of the heater female connector in 2016 and 2017, and that there is a design flaw in the 400 Watt heater cartridge if partial insertion or missing grease cause a fire. Moreover, the circumstantial evidence is overwhelming regarding the defective block heaters.

As the Alaska Supreme Court has held, in a breach of warranty case, circumstantial evidence of a defect is sufficient evidence to show a defect exists.[35] In *Alaska Rent-A-Car, Inc. v. Ford Motor Co.*,[36] the Alaska Supreme Court addressed the evidence necessary to establish a defect in a case involving a cause of action for breach of warranty. Specifically, the Court found:

> Avis need not eliminate all other possible causes of the brake failure in order to recover. It can make its case through circumstantial evidence. All inferences of fact from the proffered proofs are to be drawn in favor of the party opposing summary judgment, and against the movant.[37]

The plaintiff in the *Alaska Rent-A-Car* case sought recovery for breach of implied warranty stemming from failure of a brake pedal in an automobile. In reversing the lower court's award of summary judgment, the Alaska Supreme Court

---

[35] *See Alaska Rent-A-Car, Inc. v. Ford Motor Co.*, 526 P.2d 1136 (Alaska 1974); *Universal Motors, Inc. v. Waldock*, 719 P.2d 254 (Alaska 1986).
[36] 526 P.2d 1136 (Alaska 1974),
[37] *Id*.

{01068636}
**KENDALL DEALERSHIP HOLDINGS, LLC'S OPPOSITION TO WARREN DISTRIBUTION INC.'S MOTION FOR SUMMARY JUDGMENT REGARDING LIABILITY ISSUES**
*Kendall Dealership Holdings, LLC v. Warren Distribution, Inc.;* Case No. 3:18-cv-00146 HRH
Page 9 of 17

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

found that circumstantial evidence that 1) the brake pedal fell to the floor when depressed, 2) an inspection of the vehicle following the car accident showed a pin that held the brake pedal in place had given way, and 3) the timing and location of the accident in relationship to the sale of the vehicle was sufficient for a jury to infer that a defect existed in the product when it left Ford's hands.[38]

Indeed, the Alaska Supreme Court has held that "[p]lacing the burden on the consumer to prove a precise defect is unfair and unconscionable since the dealer and manufacturer could tamper (whether intentionally or inadvertently) with the evidence." *Universal Motors, Inc. v. Waldock* at 259. *See also Stewart v. Budget Rent-A-Car*, 470 P.2d 240(Hawaii 1970)(finding that the case was properly submitted to the jury on whether a defect existed when only proof of defect came from testimony of driver that she was driving along on a straight and level section of an asphalt road, on a sunny day, the car began veering to the left and she could no longer control it by using the steering wheel, which resulted in the car plunging over an embankment.); *See also Universal Motors, Inc. v. Waldock*, 719 P.2d 254 (Alaska 1986)("circumstantial evidence is enough to support the consumer's burden of proof that the damage was caused by a defect in factory materials or workmanship.").

---

[38] *Id*. at 259.

{01068636}
**KENDALL DEALERSHIP HOLDINGS, LLC'S OPPOSITION TO WARREN DISTRIBUTION INC.'S MOTION FOR SUMMARY JUDGMENT REGARDING LIABILITY ISSUES**
*Kendall Dealership Holdings, LLC v. Warren Distribution, Inc.;* Case No. 3:18-cv-00146 HRH
Page 10 of 17
Case 3:18-cv-00146-HRH   Document 162   Filed 11/20/20   Page 10 of 17

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

ECI had an insignificant number of fires from non-913 block heaters between 2005 and 2019. Less than a dozen during that 15 year time period, despite hundreds of different models and hundreds of thousands of block heaters thrust onto the market. 913 block heaters installed between late 2016 and mid-2017 caused more than 20 fires in vehicles. Nearly all of the 20 fires are known to have origins near the silicone connector. Testing showed anomalies in the block heater cords. Testing showed exposure to excess heat (above 150 degrees) caused thermal events. Testing showed the silicone connectors reaching temperatures exceeding 200 degrees Celsius during normal operation. The HPN cord was only temperature rated to 105 degrees. The HPN wire supplied from Southwire was found to be defective at least once in 2016 and twice in 2017.[39] ECI admits they are not confident the Southwire product meets standards 100% of the time. ECI informs Southwire following accidental discovery of a defect in May 2017 that the defect was "accidentally found" and the process and test cannot detect for this defect.[40] Testing showed the insertion of the block heater without grease increased the heat produced by 20 degrees. Field reports showed block heaters were inserted without grease. Field reports showed the block heater wires were not routed near moving or hot parts. Indeed, Toyota Canada issued a safety recall of the 913, and issued a countermeasure part. The countermeasure part increased the temperature rating of

---

[39] *See,* **Exhibit 3 at p.** 6.
[40] *See,* **Exhibit 11, compilation of ECI disclosures, at pp. 5-6.;** *See,* **Exhibit 3 at pp.** 7-9.

{01068636}
**KENDALL DEALERSHIP HOLDINGS, LLC'S OPPOSITION TO WARREN DISTRIBUTION INC.'S MOTION FOR SUMMARY JUDGMENT REGARDING LIABILITY ISSUES**
*Kendall Dealership Holdings, LLC v. Warren Distribution, Inc.;* Case No. 3:18-cv-00146 HRH
Page 11 of 17
Case 3:18-cv-00146-HRH   Document 162   Filed 11/20/20   Page 11 of 17

the material used on the cord, and decreased the wattage (and thus the amount of heat) the heater cartridge produced.

While ECI claims that under normal conditions, the part performed as intended, they did not follow up with Toyota Canada to determine why Toyota Canada's temperature testing showed the silicone connector reaching 200 degrees under normal conditions. As eloquently explained by Toyota Canada engineer, Jerry Zielinski in an email to ECI's Duncan Whitelaw, "if given a box of CSA approved materials, one could construct a cord that would be deemed unsafe."[41] That is, that even though each individual part of the cord (or other accessory part) meets testing requirements, when put together, they can create an unsafe product. ECI claims its testing does not show that the 400 Watt heater cartridge is unsafe, and that they could not find the root cause of the fires, but all of the above evidence is sufficient circumstantial evidence to infer a defect. Moreover, if failure to insert grease or perfectly clip the block heater cartridge in place causes the block heater to get too hot, then it should not be a 400 Watt heater used with cord material that cannot withstand the extra heat. ECI should have known this if they performed a proper PFMEA. The evidence infers that the cord and 400 watt cartridge, particularly in use together, are unsafe. ECI's self-serving statements that they designed and manufactured a "good and safe product" is not enough. A jury is

---

[41] *See,* **Exhibit 11 at p. 1.**

{01068636}
**KENDALL DEALERSHIP HOLDINGS, LLC'S OPPOSITION TO WARREN DISTRIBUTION INC.'S MOTION FOR SUMMARY JUDGMENT REGARDING LIABILITY ISSUES**
*Kendall Dealership Holdings, LLC v. Warren Distribution, Inc.;* Case No. 3:18-cv-00146 HRH
Page 12 of 17

Case 3:18-cv-00146-HRH   Document 162   Filed 11/20/20   Page 12 of 17

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

entitled to hear the overwhelming evidence to the contrary and determine whether there is sufficient circumstantial evidence to infer a defect.

All of this information is found in the testimony of ECI/ECC employees, as well as the Toyota Canada reports, and the findings of Mr. Shideh. The circumstantial evidence is overwhelming. Mr. Shideh testifies as to the defect. In any event, a jury may infer from this evidence that a defect existed in the 913 and the 913-1, which creates an issue of material fact. Therefore, summary judgment is inappropriate.

### D. Warren and ECI violated the UTPA

Warren and ECI both violate the Unfair Trade Practices Act ("UTPA"). The UTPA broadly prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce"[42] and includes an extensive list of prohibited acts.[43] "[I]ntent, scienter, actual reliance or damages, and even actual deception" are all unnecessary to show deception under the UTPA.[44] "All that ... is required is proof that a practice has a tendency or capacity ... to deceive even a significant minority of consumers."[45] However, private parties seeking damages rather than injunctive relief must show "an ascertainable loss of money or property as a result" of the unlawful act.[46]

---

[42] AS 45.50.471(a)
[43] AS 45.50.471(b)
[44] *Borgen v. A & M Motors, Inc*., 273 P.3d 575, 590 (Alaska 2012) (quoting *ASRC Energy Servs. Power & Commc'ns, LLC v. Golden Valley Elec. Ass'n, Inc*., 267 P.3d 1151, 1163 (Alaska 2011)).
[45] *Id*. (quoting ASRC Energy, 267 P.3d at 1163).
[46] AS 45.50.531(a)

{01068636}
**KENDALL DEALERSHIP HOLDINGS, LLC'S OPPOSITION TO WARREN DISTRIBUTION INC.'S MOTION FOR SUMMARY JUDGMENT REGARDING LIABILITY ISSUES**
*Kendall Dealership Holdings, LLC v. Warren Distribution, Inc.;* Case No. 3:18-cv-00146 HRH
Page 13 of 17
Case 3:18-cv-00146-HRH   Document 162   Filed 11/20/20   Page 13 of 17

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

ECI notified Warren that the 913 had problems in March of 2017. Warren continued to subsequently sell the 913 to Kendall in March of 2017 even though it knew about the defect in the 913.[47] Warren concealed this material fact with intent that Kendall rely upon the omission in connection with the sale of the 913 block heater.

Subsequently, in August 2017, November 2017, and January 2018, Warren sold Kendall the 913-1 without informing it why ECI modified the cord. In February 2018, when speaking with Dan McNaught from ECI and Jimmy O'Connor from Warren, both McNaught and O'Connor stated to Mr. Blewett that the 913-1 was safe, and there was nothing 'unsafe' about the 400 Watt heater. Subsequently, Mr. Blewett learned that Toyota Canada issued a countermeasure for the recalled 913 which included reducing the wattage of the block heater to 202 Watts. After discovery in the instant litigation, it is clear, as discussed above, that the 400 Watt heater was not safe. Kendall continued using the product, in reliance on Warren and ECI's statements until around March 8, 2018. ECI and Warren were deceptive in their sale of the 913 and 913-1.

### E. Kendall suffered an ascertainable loss under AS 45.50.531

Warren is incorrect in its assertion of the law and the facts regarding Kendall's ascertainable loss in connection with Warren's deceptive practices. The

---

[47] *See,* **Exhibit 6 at pp.** 2-3

{01068636}
**KENDALL DEALERSHIP HOLDINGS, LLC'S OPPOSITION TO WARREN DISTRIBUTION INC.'S MOTION FOR SUMMARY JUDGMENT REGARDING LIABILITY ISSUES**
*Kendall Dealership Holdings, LLC v. Warren Distribution, Inc.;* Case No. 3:18-cv-00146 HRH
Page 14 of 17

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

Alaska Pattern Jury Instructions define ascertainable loss as: The plaintiff suffered a loss of money or property if he received something other than what he bargained for. The plaintiff's loss is ascertainable if it is measurable even though the precise amount of the loss is not known.[48]

Violations of subsection b(11) or (b)(12) of the UTPA must show the deceptive conduct occurred "in connection with the sale or advertisement of good or services."[49] In *Cozzetti v. Madrid*,[50] the Alaska Supreme Court addressed whether this phrase excludes conduct that occurred after the sale. The Alaska Supreme Court agreed with the position that "in connection with" means "about" or "related to" the sale, and the inquiry should be based on "the *subject matter* of the deception" rather than "*when* deceptive conduct occur[red]."[51] As the State of Alaska argued in the *Cozzetti* matter, case law has already established that "the UTPA as a whole" covers post-sale conduct, excluding such conduct from the subsections would narrow the UTPA's scope and "the protections afforded Alaskan consumers." Other courts have construed "in connection with" to liberally include conduct occurring after a sale if there is "some relation or nexus" between the act and the sale, and the Alaska Supreme Court agreed that "in connection with" includes post-sale conduct that is related to the sale.[52]

---

[48] APJI 10.04.
[49] AS 45.50.471(b)(11), (12).
[50] No. S-15117, 2017 WL 6395736, at *9 (Alaska Dec. 13, 2017)
[51] *Id*.
[52] *Id*. citing *State ex rel. Miller v. Cutty's Des Moines Camping Club, Inc.,* 694 N.W.2d 518, 526–28 (Iowa 2005); *see also Conway v. CitiMortgage, Inc*., 438 S.W.3d 410, 414 (Mo. 2014) (en banc) (construing "in

{01068636}
**KENDALL DEALERSHIP HOLDINGS, LLC'S OPPOSITION TO WARREN DISTRIBUTION INC.'S MOTION FOR SUMMARY JUDGMENT REGARDING LIABILITY ISSUES**
*Kendall Dealership Holdings, LLC v. Warren Distribution, Inc.;* Case No. 3:18-cv-00146 HRH
Page 15 of 17
Case 3:18-cv-00146-HRH   Document 162   Filed 11/20/20   Page 15 of 17

Testimony shows two version of events, one where Mr. McNaught claims he told Jimmy O'Connor that there was a problem with the 913 following a March 2017 order, but then Warren continues to sell the 913 in late March 2017 to Kendall.[53] The second is Kristie Cook's testimony that Mr. McNaught told Warren that the 913 sold to the US and the 913 sold to Canada was a different part.[54] In either event, Warren continued selling the 913 to Kendall until at least March 30, 2017, and continued selling the 913-1 to Kendall until at least January 2018. Mr. McNaught and Mr. O'Connor's statements to Mr. Blewett in February of 2018 that the 913-1 was safe is certainly "in connection" with the sale of the 913-1 the month prior, and resulted in Kendall continuing to sell the 913-1 until it subsequently learned that the Canadian countermeasure to the defective product was a 202 watt heater. Kendall has ascertainable losses from both the deceptive sale of the 913 as well as the deceptive sale of the 913-1.

### III. **Conclusion**

There are issues of material fact which preclude entry of summary judgment. Defendants' motion must be denied.

---

connection with" to include "use of the enumerated deceptive practices if there is a relationship between the sale of the merchandise and the alleged unlawful conduct").

[53] *See,* **Exhibit 4 at pp. 2-3.**
[54] *See,* **Exhibit 5 at p. 9.**

{01068636}
**KENDALL DEALERSHIP HOLDINGS, LLC'S OPPOSITION TO WARREN DISTRIBUTION INC.'S MOTION FOR SUMMARY JUDGMENT REGARDING LIABILITY ISSUES**
*Kendall Dealership Holdings, LLC v. Warren Distribution, Inc.;* Case No. 3:18-cv-00146 HRH
Page 16 of 17
Case 3:18-cv-00146-HRH   Document 162   Filed 11/20/20   Page 16 of 17

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

DATED this 20th day of November, 2020, at Anchorage, Alaska.

JERMAIN DUNNAGAN & OWENS, P.C.
Attorneys for Kendall Dealership Holdings, LLC


By: */s/ Allison G. Strickland*
Allison G. Strickland
Alaska Bar No.: 1005020


**CERTIFICATE OF SERVICE:**
This is to certify that a true and correct copy of the foregoing was served by E-Service using CM/ECF System on November 20, 2020 to the following:

Daniel T. Quinn
Marc G. Wilhelm
RICHMOND & QUINN
360 K Street, Suite 200
Anchorage, AK 99501
dquinn@richmondquinn.com
mwilhelm@richmondquinn.com

Cynthia L. Ducey
DUCEY & ASSOCIATES, LLC
745 W 4th Ave., Ste. 425
Anchorage, AK 99501
cld@duceylawak.com

Blake H. Call
CALL & HANSON, P.C.
413 G Street
Anchorage, AK 99501
bhc@chklaw.net

*/s/ Anita Rustad*
Anita Rustad

LAW OFFICES OF
**JERMAIN DUNNAGAN & OWENS**
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

{01068636}
**KENDALL DEALERSHIP HOLDINGS, LLC'S OPPOSITION TO WARREN DISTRIBUTION INC.'S MOTION FOR SUMMARY JUDGMENT REGARDING LIABILITY ISSUES**
*Kendall Dealership Holdings, LLC v. Warren Distribution, Inc.;* Case No. 3:18-cv-00146 HRH
Page 17 of 17
Case 3:18-cv-00146-HRH   Document 162   Filed 11/20/20   Page 17 of 17