　　　　　IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| KENDALL DEALERSHIP HOLDINGS, LLC,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>WARREN DISTRIBUTION, INC., a Nebraska Corporation,<br><br>　　　　　Defendant.<br>_____<br>WARREN DISTRIBUTION, INC.,<br><br>　　　　　Third-party plaintiff,<br><br>　vs.<br><br>ELECTRONIC COMPONENTS INTERNATIONAL, INC. and ELECTRICAL COMPONENTS CANADA, INC.,<br><br>　　　　　Third-party defendants.<br>_____ | No. 3:18-cv-0146-HRH |

## O R D E R

### Joint Motion to Strike Expert Sean Shideh

Defendant Warren Distribution Inc. and third-party defendants Electrical Components International, Inc. and Electrical Components Canada, Inc. move to strike Sean Shideh as an

-1-

expert witness.[1]  This motion is opposed by plaintiff Kendall Dealership Holdings, LLC.[2]  Oral argument was requested and has been heard.

Background

This case arises out of claims that some 8,000 engine block heaters which plaintiff purchased from Warren were defective.  Warren allegedly purchased the engine block heaters from ECI and the engine block heaters were allegedly manufactured by ECC.[3]  Plaintiff has asserted breach of contract, UTPA, breach of the implied warranty of merchantability, and breach of the implied warranty of fitness for a particular purpose claims against Warren.  Plaintiff seeks actual, consequential, and punitive damages.

Plaintiff retained Sean Shideh, an automotive/mechanical engineer, as an expert witness.  Shideh was retained

> to review a large volume of documents and advise if a defect in an engine block heater (EBH), under part number PU140-00913 (913), that was designed, manufactured, and distributed by ECI, ECC, and Warren Distribution was the root cause of fire incidents that occurred in some Toyota vehicles in Canada and Alaska in 2016 and 2017.[[4]]

---

[1]Docket No. 128.

[2]Docket No. 159.

[3]Third Party Complaint at 3, ¶ 8, Docket No. 21.

[4]Shideh Expert Report at 1, Exhibit A, Joint Motion to Strike [etc.], Docket No. 128.

These documents, according to plaintiff, included "numerous correspondence between ECI, ECC, TCI, other vendors/suppliers, field investigations, duplication tests, manufacturing quality check sheets, drawings, pictures, X-Ray images, . . . and deposition transcripts of two ECI and ECC employees with correlating exhibits."[5]

Plaintiff contends that Shideh's "opinion is that there was 'a manufacturing defect in the assembly of the heater female connector in 2016 and 2017.'"[6] But his report does not say this. Rather, Shideh's expert report contains three "conclusions":

1) "Errors in installation procedures of EBH 913 by Toyota dealer technicians cannot be considered a factor in these fires."[7]

2) "Fires occurring in this specific period also cannot be related to sudden changes in engine design and engine compartment packaging by Toyota as noted by ECI/ECC as a possibility for the reason of heaters experiencing high temperatures."[8]

3) "The evidence pointed to a manufacturing defect in the assembly of the heater female connector in 2016 and early 2017, which appears to have

---

[5]Kendall Dealership Holdings, LLC's Opposition to Motion to Strike Expert Sean Shideh at 3, Docket No. 159.

[6]Id. at 4.

[7]Shideh Expert Report at 3, Exhibit A, Joint Motion to Strike [etc.], Docket No. 128.

[8]Id.

-3-

been successfully remedied after improvements in the ECI/ECC operations and/or countermeasures put in the new part."[9]

Warren, ECI, and ECC (referred to herein as "defendants") now move to strike Shideh as an expert witness. In their opening brief, defendants appeared to rely on both Rule 26 and Daubert as a basis for striking Shideh. However, defendants' argument focuses on Daubert, and the court will address defendants' motion to strike as one challenging the admissibility of Shideh's proposed expert testimony based upon Rule 702, Federal Rules of Evidence.

Discussion

Rule 702, which governs the admissibility of expert testimony,

> provides that expert opinion evidence is admissible if: (1) the witness is sufficiently qualified as an expert by knowledge, skill, experience, training, or education; (2) the scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (3) the testimony is based on sufficient facts or data; (4) the testimony is the product of reliable principles and methods; and (5) the expert has reliably applied the relevant principles and methods to the facts of the case.

City of Pomona v. SQM North America Corp., 750 F.3d 1036, 1043 (9th Cir. 2014). "Before admitting expert testimony into evidence, the district court must perform a 'gatekeeping role' of ensuring that the testimony is both 'relevant' and 'reliable' under Rule 702." United States v. Ruvalcaba-Garcia, 923 F.3d 1183, 1188 (9th Cir. 2019) (quoting Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 597 (1993)). "Relevancy simply requires that 'the

---

[9] Id. at 4.

-4-

evidence logically advance a material aspect of the party's case.'" Id. (quoting Estate of Barabin v. AstenJohnson, Inc., 740 F.3d 457, 463 (9th Cir. 2014)). "'[R]eliability' . . . requires that the expert's testimony have 'a reliable basis in the knowledge and experience of the relevant discipline.'" Id. at 1188-89 (quoting Barabin, 740 F.3d at 463). "The district court must assess whether 'the reasoning or methodology underlying the testimony is scientifically valid' and 'properly can be applied to the facts in issue[.]'" Id. at 1189 (quoting Daubert, 509 U.S. at 592–93). "'The district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury.'" City of Pomona, 750 F.3d at 1044 (quoting Alaska Rent-A-Car, Inc. v. Avis Budget Group, Inc., 738 F.3d 960, 969-70 (9th Cir. 2013)). "The court must assess the expert's reasoning or methodology, using as appropriate criteria such as testability, publication in peer-reviewed literature, known or potential error rate, and general acceptance." Id. "But these factors are 'meant to be helpful, not definitive, and the trial court has discretion to decide how to test an expert's reliability as well as whether the testimony is reliable, based on the particular circumstances of the particular case.'" Id. (quoting Primiano v. Cook, 598 F.3d 558, 564 (9th Cir. 2010)). "[O]bjections to the inadequacies of" an expert's analysis "are more appropriately considered an objection going to the weight of the evidence rather than its admissibility[.]" Hemmings v. Tidyman's Inc., 285 F.3d 1174, 1188 (9th Cir. 2002). "[T]he factfinder may be confronted with opposing experts, additional tests, experiments, and publications, all of which may increase or lessen the value of the expert's

testimony. But their presence should not preclude the admission of the expert's testimony—they go to the weight, not the admissibility." Kennedy v. Collagen Corp., 161 F.3d 1226, 1230-31 (9th Cir. 1998). "[T]he rejection of expert testimony is the exception rather than the rule." Abarca v. Franklin County Water Dist., 761 F. Supp. 2d 1007, 1039 (E.D. Cal. 2011) (citation omitted).

Defendants first argue that Shideh's opinion will not be relevant because he offers no conclusion as to whether there was a manufacturing defect or design defect. Defendants argue that Shideh's report is vague in that he only states that the evidence "points" to a manufacturing defect but that he does not state, on a more likely than not engineering basis, that the block heaters at issue were defective in design or manufacture. As such, defendants argue that Shideh's opinion is irrelevant because it will not be helpful to a jury.

Shideh's opinion that the evidence points to a manufacturing defect is indeed vague. However, as the Ninth Circuit Court has observed, "[l]ack of certainty is not, for a qualified expert, the same thing as guesswork." Primiano, 598 F.3d at 565. Here, defendants have not challenged Shideh's qualifications as an expert. Rather, they challenge the substance of his opinion. The court is not persuaded by plaintiff's argument that Shideh's suggestion as to the vector of evidence is stronger than the more usual "more likely than not" opinion. On the contrary, the Shideh opinion strikes the court as being weak and in effect a "punt" to the jury. But, despite the weakness of Shideh's opinion, it is not irrelevant simply because he

did not express his opinion in terms of it being "more likely than not" that a manufacturing defect existed.

Defendants next argue that Shideh's opinion is not relevant because he did not address the cause of the vehicles fires in general. Defendants also argue that Shideh's attempt to provide an opinion as to causation at his deposition fails. At his deposition, Shideh testified that his conclusions were based on the fact that "[t]here were no significant remarkable reports before this period and there is none after . . . the recall."[10] The recall in question was a July 20, 2017 recall issued by Toyota Canada, which stated that "[t]he electrical power cords of [some] dealer installed accessory engine block heaters may have been improperly manufactured, resulting in contact between wires that could cause a short circuit. If a short circuit occurs, the wire insulation may overheat, increasing the risk of a fire."[11] Shideh opined that the vehicle fires may have been related to a product defect because there were fires before the recall but no fires after the recall. Defendants argue that Shideh's correlation between the time when there were no known engine block heater fires and the time when such fires appear to have occurred is too slight to be considered relevant. See United States v. Valencia, 600 F.3d 389, 425 (5th Cir. 2010) ("[e]vidence of mere correlation, even a strong correlation, is often spurious and misleading when masqueraded as causal evidence, because it does not adequately account for other contributory variables").

---

[10]Video Deposition of Shahrokh 'Sean' Shideh at 66:14-23, Exhibit B, Joint Motion to Strike [etc.], Docket No. 128.

[11]Toyota Recall, Exhibit C at 1, Joint Motion to Strike [etc.], Docket No. 128.

In response, plaintiff argues that although correlation may not be sufficient on its own to establish causation, "where evidence of correlation itself is potentially relevant and unlikely to mislead the jury, an expert who reliably discerns this relationship can present such conclusions to the jury." Id. Plaintiff argues that Shideh's opinion is based on a number of factors, temporal proximity being only one, and thus, it is appropriate for him to consider the temporal relationship in reaching his conclusion that there may have been a manufacturing defect in the engine block heaters.

When considered in the light of other facts, such as testing done by Toyota Canada and/or ECC/ECI, Shideh's causation opinion offered at his deposition is relevant. Information as to the time period when fires appear to have occurred would "logically advance[] a material aspect of [plaintiff's] case." Messick v. Novaritis Pharmaceuticals Corp., 747 F.3d 1193, 1196 (9th Cir. 2014) (citation omitted). Defendants' arguments by and large go to the weight to be given the foregoing evidence, not its relevancy.

But even if Shideh's causation opinion testimony is relevant, which it is, defendants argue that he should still be stricken as an expert because his testimony will not be reliable. As the Supreme Court has observed, "'[t]rained experts commonly extrapolate from existing data.'" City of Pomona, 750 F.3d at 1049 (quoting General Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997)). But, "where expert opinion is 'connected to existing data only by the ipse dixit of the expert' . . . there may be 'too great an analytical gap between the data and the opinion pr[o]ferred' to support inclusion of the testimony." Id. (quoting General Elec. Co., 522 U.S.

Case 3:18-cv-00146-HRH   Document 222   Filed 04/13/21   Page 8 of 10

at 146). Defendants argue that here there is too great of an analytical gap between the information on which Shideh claims his opinion is based and that opinion. In short, defendants argue that Shideh has not provided an adequate basis for his opinion that the evidence points to a manufacturing defect. Defendants contend that Shideh's opinion is based on three matters: his examination of five or six vehicle fires, his review of the recall notice from Toyota Canada, and his review of documents produced in discovery by ECC/ECI. Defendants argue that none of these support any kind of conclusion that there was a manufacturing defect in the 8,000 block heaters which plaintiff purchased from Warren. Defendants insist that these three matters, individually or combined, do not provide an adequate basis for Shideh's conclusion. In other words, defendants argue that Shideh's opinion evidence is unreliable because it is not based on sufficient facts or data.

In deciding the instant motion, the court's focus has primarily been upon the question of whether Shideh's opinion is based upon sufficient facts or data. The court finds that Shideh's opinion – that "[t]he evidence pointed to a manufacturing defect in the assembly [of engine block heaters]"[12] – is supported by sufficient facts or data by reason of his reliance upon the examination of several engine block heaters, Toyota Canada's recall notice,[13] and Shideh's documents review. That said, Shideh's report and his deposition testimony offer

---

[12] Shideh Expert Report at 3, Exhibit A, Joint Motion to Strike [etc.], Docket No. 128.

[13] Although the recall notice itself would not be admissible, an expert may rely on information he learned via the notice. West v. Bayer HealthCare Pharmaceuticals Inc., 293 F. Supp. 3d 82, 92 (D.D.C. 2018).

-9-

no scientific principles, technology, or specialized knowledge that would answer the question: "Were all of the engine block heaters produced during the relevant time period defective or, what seems more likely, what was the failure rate?" The court recognizes that there are probably some reliable principles which might have been brought to bear on these questions, but Shideh did not apply such principles and his report and testimony do not answer these questions. Shideh has not provided any basis for projecting his opinion about the defective manufacture of the engine block heaters to the total universe of block heaters purchased by plaintiff from Warren. Shideh may offer his opinion that the evidence points to a manufacturing defect in the engine block heaters and he may explain that opinion to the extent he did so at his deposition. But, with Shideh's expert testimony limited, as it must be, to his report and deposition testimony, plaintiff will have to look elsewhere for evidence of how it was impacted by the alleged manufacturing defect.

## Conclusion

Defendants' motion to strike Shideh as an expert is denied.

DATED at Anchorage, Alaska, this 13th day of April, 2021.

/s/ H. Russel Holland<br>
United States District Judge

-10-