**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

KENDALL DEALERSHIP HOLDINGS, LLC, )
)
Plaintiff, )
vs. )
)
WARREN DISTRIBUTION, INC., )
)
Defendant. )
_____ )
)
WARREN DISTRIBUTION, INC., )
)
Third-Party Plaintiff, )
) No. 3:18-cv-0146-HRH
vs. )
)
ELECTRICAL COMPONENTS )
INTERNATIONAL, INC., and ELECTRICAL )
COMPONENTS CANADA, INC., )
)
Third-Party Defendants. )
_____ )

O R D E R

Plaintiff's Motion in Limine

Plaintiff moves to exclude certain opinions of defense expert, Steve Roberts.[1] This motion is opposed.[2] Oral argument was not requested and is not deemed necessary.

---

[1]Docket No. 171.

[2]Docket No. 185.

ORDER – Plaintiff's Motion in Limine  - 1 -

Background

This case arises out of claims that some 8,000 engine block heaters which plaintiff Kendall Dealership Holdings, LLC, purchased from defendant Warren Distribution, Inc. were defective. Plaintiff has asserted breach of contract, UTPA, breach of the implied warranty of merchantability, and breach of the implied warranty of fitness for a particular purpose claims against Warren.

One component of plaintiff's economic damages is the direct cost of the alleged defective block heaters it purchased from Warren. According to Warren, plaintiff is seeking to recover the cost of purchasing 7,943 block heaters.

Another component of plaintiff's economic damages is the repair costs associated with either disabling or replacing the block heaters plaintiff contends were defective. Plaintiff mailed out 5,594 safety notices advising customers to bring their vehicles in to have the block heater disabled or repaired.[3] Between January 8, 2018, and August 8, 2018, block heater repairs were done on 2,433 customer-owned vehicles and 717 vehicles in plaintiff's inventory.[4] Stephen Colt, plaintiff's damages expert, opined that the "[r]epair costs include the direct cost of technician and service advisor time, plus the indirect costs of parts, admin, and support staff time, [as well as] the indirect costs of shop supplies and general overhead."[5] Colt valued the repair time at $130 per hour, "which is the loaded or 'burdened' rate charged for repair work."[6]

---

[3] Colt Expert Report at 13, Exhibit 5, Motion in Limine Regarding Expert Testimony on Damages, Docket No. 171.

[4] Id. at 4.

[5] Id.

[6] Id.

ORDER – Plaintiff's Motion in Limine — - 2 -

Warren retained Steve Roberts of Veritas Forensic Accounting & Economics, LLC, to evaluate plaintiff's economic damage claims. Roberts has opined that it is not reasonable nor reliable for plaintiff to base its damages on the "full cost of all 8,577 block heaters" it purchased from Warren "without offering any evidence that the heaters have been recovered and returned to Warren Distributing [sic] and that heater credits have been paid to Kendall Toyota customers who purchased the faulty units."[7] Roberts has also opined that an hourly rate of $130 for mechanics to do the heater recall repairs is not reasonable, that a reasonable hourly rate for this work would be between $25 and $30 per hour.[8] Roberts opines that Colt has improperly "include[d] Kendall Toyota overhead costs like those of lot boys and service writers whose costs do not change with recall activities and whose cost was already recovered in a normal manner through daily Kendall Toyota business operations and the original sale of the block heaters."[9] As for lost profits, or lost opportunity costs, Roberts opines that "businesses typically can avoid income loss" associated with a recall "through working overtime and/or working on issues during slack time."[10] Roberts also opines that there is no evidence that shows that plaintiff was "turning customers away due" to the recall repairs.[11]

Plaintiff now moves to exclude Roberts' opinions regarding the direct cost of the engine block heaters and the $130 hourly repair rate.

---

[7] Roberts Expert Report at 2, Exhibit 6, Motion in Limine Regarding Expert Testimony on Damages, Docket No. 171.

[8] Id. at 6.

[9] Id. at 6-7.

[10] Id. at 7.

[11] Id.

ORDER – Plaintiff's Motion in Limine - 3 -

Discussion

Plaintiff first argues that Roberts' opinion that plaintiff can only recover the cost of engine block heaters that have been returned by customers is contrary to Alaska law. Under Alaska law, which governs plaintiff's claims, "[t]he measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted[.]" AS 45.02.714(b). In addition, "[i]n a proper case any incidental and consequential damages under AS 45.02.715 may also be recovered." AS 45.02.714(c). The Alaska Supreme Court has explained that

> [d]irect economic loss may be said to encompass damage based on insufficient product value; thus, direct economic loss may be 'out of pocket'- the difference in value between what is given and received - or 'loss of bargain' - the difference between the value of what is received and its value as represented. Direct economic loss also may be measured by costs of replacement and repair. Consequential economic loss includes all indirect loss, such as loss of profits resulting from inability to make use of the defective product.

Morrow v. New Moon Homes, Inc., 548 P.2d 279, 290 (Alaska 1976) (citation omitted).

Plaintiff argues that Roberts' opinion that it can only recover damages for defective block heaters returned by customers is contrary to AS 45.02.714 because the block heaters had no economic value to plaintiff at the time they were accepted. Plaintiff contends that if it had been aware that the block heaters were defective, it would not have installed them in its customers' vehicles. Thus, plaintiff insists that it can recover damages for every block heater it purchased from Warren. As such, plaintiff argues that

Roberts should be precluded from testifying that it "can only recover damages for heaters returned by consumers."[12]

As Warren points out, plaintiff has ignored the full language of AS 45.02.714(b). AS 45.02.714(b), in its entirety, provides that "[t]he measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, <u>unless special circumstances show proximate damages of a different amount</u>." AS 45.02.714(b) (emphasis added). Special circumstances may exist in this case, but not necessarily for the reason opined by Roberts.

Roberts opines that plaintiff cannot recover damages for every block heater it purchased from Warren because if plaintiff were allowed to do so, it would result in a double recovery for plaintiff. In offering this opinion, Roberts makes reference to the "substantial profit" that plaintiff made from selling the engine block heaters.[13] Thus, in response to the instant motion, Warren argues that special circumstances exist in this case because plaintiff sold many of the block heaters at a profit and never returned the sales price to its customers. Warren contends that plaintiff's "damages must be modified by deducting the profits made on resale" of the engine block heaters. <u>Shoop v. DaimlerChrysler Corp.</u>, 864 N.E.2d 785, 790 (Ill. Ct. App. 2007) (internal citation omitted).

But the issue here is not plaintiff's retention of its profits on the engine block heaters it sold. The issue is that plaintiff is attempting to recover the <u>cost</u> of the engine

---

[12]Motion in Limine Regarding Expert Testimony on Damages at 4, Docket No. 171.

[13]Roberts Expert Report at 4, Exhibit 6, Motion in Limine Regarding Expert Testimony on Damages, Docket No. 171.

block heaters twice. Plaintiff has sold most of the engine block heaters that it purchased from Warren, and for many of those heaters, it has not had to refund the cost of the heaters to its customers. If plaintiff were allowed to recover the cost of the engine block heaters it purchased from Warren even if it never refunded that cost to its customers, plaintiff would be getting a double recovery. Under that scenario, plaintiff would be paid the cost of the heater once when selling the heater to its customers, and then a second time in the form of damages from Warren. The special circumstances provision of AS 45.02.741(b) is designed to prevent such double recoveries. Because Roberts' opinion is, at its essence, an opinion that a double recovery is not allowed, his opinion is not contrary to Alaska law, although it is also not a complete statement of Alaska law since it appears to focus on plaintiff's profits, rather than on the cost of the heaters.

Plaintiff next argues that Roberts' opinion that plaintiff cannot recover its ordinary hourly repair rate of $130, which includes overhead costs and lost profits or lost opportunity costs, is contrary to Alaska law and should be excluded. "'The goal of contract damages is to place the nonbreaching party in as good a position as if the contract had been fully performed.'" Central Bering Sea Fishermen's Ass'n v. Anderson, 54 P.3d 271, 278 (Alaska 2002) (quoting Luedtke v. Nabors Alaska Drilling, Inc., 834 P.2d 1220, 1226 (Alaska 1992)). Plaintiff argues that if the block heaters had not been defective, then it would not have had to disable or remove them from customers' vehicles free of charge. Plaintiff argues that its damages must include all necessary costs incurred in performing the heater recall repair work, which includes the direct cost of the mechanic's time as well as indirect costs such as parts, administration, support staff, shop supplies, and general overhead. Plaintiff insists that these indirect costs are part of its "full cost" of providing repair services to replace the defective block heaters. In addition,

ORDER – Plaintiff's Motion in Limine - 6 -

plaintiff argues that lost profits or lost opportunity costs can be included in the $130 hourly rate so long as there is a reasonable basis for calculating such a loss. Plaintiff thus argues that Roberts' opinion that the $130 rate is not reasonable because it includes overhead costs and lost profits is contrary to Alaska law and must be excluded.

Roberts' opinion that the $130 rate is not reasonable is not contrary to Alaska law. Roberts did not opine that overhead costs and lost profits could never be included in a damage calculation, but rather that plaintiff has not produced any evidence that it had increased overhead associated with the recall or that it lost profits or revenue as a result of the recall.[14] Roberts has opined that a rate of $25 to $30 per hour would put Kendall in as good a position as it would have been had Warren not sold the defective block heater, which is a proper way to measure damages under Alaska law for the claims that plaintiff has asserted. Under Alaska law, "loss of profits damages" must "be reasonably certain[.]" Erwin v. Mendenhall, 433 P.3d 1090, 1095–96 (Alaska 2018) (citation omitted). Roberts is opining that plaintiff's lost profits, or lost opportunity costs, that are incorporated into the $130 rate, are not reasonably certain, thereby making the $130 rate unreasonable.

Finally, in the conclusion of its opposition, Warren requests that the court, in addition to denying the instant motion in limine, also hold that plaintiff "is not entitled to recover lost opportunity costs without proof that it suffered lost opportunity damages such as lost customers or sales" and that plaintiff "is not entitled to recover diminution in value of the block heaters it purchased from Warren, given it resold those block heaters at

---

[14] Affidavit of Steve Roberts at 6, ¶ 17, Exhibit C, Opposition to Kendall's Motion in Limine Regarding Expert Testimony on Damages, Docket No. 185.

ORDER – Plaintiff's Motion in Limine - 7 -

full price and has retained all profits from those sales."[15]  Warren acknowledges that these holdings are not required in order for the court to deny the instant motion, but Warren contends that "guidance on th[e]se issues will substantially assist the parties with the valuation of this claim."[16]

Warren's request violates Rule 7(b)(1) which provides that "[a] request for a court order must be made by motion."  It is for this reason courts have found that "a request for affirmative relief is not proper when raised for the first time in an opposition."  <u>Duong v. Groundhog Enterprises, Inc.</u>, Case No. 2:19-cv-01333-DMG-MAA, 2020 WL 2041939, at *12 (C.D. Cal. Feb. 28, 2020).  Warren's request is denied.  At trial, the court will, of course, instruct the jury as to how plaintiff's damages should be calculated if the engine block heaters supplied by Warren were defective.

<u>Conclusion</u>

Plaintiff's motion in limine[17] is denied.

DATED at Anchorage, Alaska, this  17th  day of June, 2021.

/s/ H. Russel Holland
United States District Judge

---

[15]Opposition to Kendall's Motion in Limine Regarding Expert Testimony on Damages at 17, Docket No. 185.

[16]<u>Id.</u>

[17]Docket No. 171.