Gary C. Sleeper
Allison G. Strickland
Kendra E. Bowman
JERMAIN, DUNNAGAN & OWENS, P.C.
3000 A Street, Suite 300
Anchorage, AK 99503
Telephone: (907) 563-8844
Facsimile: (907) 563-7322
gcsleeper@jdolaw.com
astrickland@jdolaw.com
kbowman@jdolaw.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| KENDALL DEALERSHIP HOLDINGS, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> WARREN DISTRIBUTION, INC., a Nebraska Corporation, <br><br> Defendant. | |
| WARREN DISTRIBUTION, INC., <br><br> Third Party Plaintiff, <br><br> vs. <br><br> ELECTRICAL COMPONENTS INTERNATIONAL, INC., and ELECTRICAL COMPONENTS CANADA, INC., and TOYOTA CANADA, INC. <br><br> Third Party Defendants. | Case No. 3:18-CV-00146 HRH |

{01072337}

## MOTION *IN LIMINE* TO EXCLUDE THE EXPERT TESTIMONY OF STAN JAWORSKI

### INTRODUCTION

COMES NOW Plaintiff Kendall Dealership Holdings, LCC ("Kendall") and moves *in limine* to exclude the testimony of defense liability expert Stan Jaworski. Kendall's motion should be granted because Jaworski's investigation does not comport with the scientific method as required by *Daubert* and as provided by NFPA 921. Therefore, Jaworski's expert opinions as to the cause and origin of the fire must be excluded under FRE 702, 401, and 403.

### LEGAL STANDARD

Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579 (1993) and its progeny permit only expert testimony that is scientifically reliable. A district court must not admit expert testimony developed expressly for purposes of litigation unless the expert (1) points "to some objective source to show that [the expert has] followed the scientific method, as it is practiced by (at least) a recognized minority of scientists in their field;"[1] and (2) "elucidate[s] how the relevant evidence lends support to [his or her] opinions by explaining precisely how [the expert] went about reaching [his or her] conclusions."[2] If a district court reviews the steps an expert took in reaching his conclusions and finds that those conclusions are "'connected to existing data only by

---

[1] *Domingo v. T.K.*, 289 F.3d 600, 605 (9th Cir. 2002).
[2] *McClellan v. I-Flow Corp.*, 710 F. Supp. 2d 1092 (D. Or. 2010).

the *ipse dixit* of the expert"' or that "'there is simply too great an analytical gap between the data and the opinion proffered,'" the district court should deem the expert's testimony inadmissible as unreliable.[3]

Federal courts have recognized as reliable the standards set forth in the National Fire Protection Association's *Guide for Fire and Explosions Investigations* ("NFPA 921"). NFPA 921 provides detailed guidance for every aspect of fire investigation. The hallmark of fire investigation under NFPA 921 is testing and ruling out causation hypotheses.[4] The goal is to "disprove, rather than to confirm, [a] hypothesis."[5] For a causation theory to be considered methodologically sound, "all credible data [must be] accounted for and all credible alternate cause hypotheses [must] be considered and eliminated." "The failure to consider alternate hypotheses is a serious error."[6] Therefore, an investigator is not permitted to reach a hypothesis and collect evidence that supports it, but must actively consider all reasonable hypotheses and rule them out to reach a cause and origin opinion.

NFPA 921 provides a six step "systematic approach" in which an investigator must: (1) recognize that a need exists to determine what caused the fire; (2) define the problem; (3) collect data; (4) analyze the data; (5) develop a hypothesis based on the data; and (6) test the hypothesis.[7] Each of these steps include specific requirements for safeguarding the

---

[3] *Domingo*, 289 F.3d at 607 (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).
[4] NFPA 921 § 19.6 and 19.7.
[5] NFPA 921 § 19.6.4.
[6] NFPA 921 § 19.7.
[7] NFPA 921 § 4.2, 4.3.

{01072337}
**MOTION *IN LIMINE* TO EXCLUDE THE EXPERT TESTIMONY OF STAN JAWORSKI**
*Kendall Dealership Holdings, LLC v. Warren Distribution, Inc.;* Case No. 3:18-cv-00146 HRH
Page 3 of 14

investigative process to achieve a science-based conclusion. This method of developing

and testing hypotheses must continue until *all* feasible hypotheses have been tested.

Otherwise the fire should be listed as "undetermined."[8]  When an expert explicitly

references the guide in reaching his or her conclusion, ". . . courts often exclude expert

testimony that fails to comport with NFPA 921 standards."[9]   Because Jaworski's expert

opinion fails to comply with NFPA 921 standards, he should be precluded from testifying

at trial.

Jaworski contends his work was performed in accordance with the dictates of NFPA

921.[10]  In fact, Jaworski testified NFPA 921 was the only standard guideline he followed.[11]

There is nothing in Jaworski's report to show that Jaworski's examination followed that

methodology.  The only indication he utilized NFPA 921 is in his report's introduction

listing the documents he reviewed, and referenced in his opinion that Mr. Shideh's

---

[8] NFPA 921 §18.6.

[9] *See*, *e.g.*, *Manuel v. MDOW Ins. Co.*, 791 F.3d 838,845 (8th Cir. 2015) ("[I]f an expert purports to have followed NFPA 921, he must have followed it reliably, or his testimony may be excluded."); *Mich. Millers Mut. Ins. Corp. v. Benfield*, 140 F.3d 915, 920 (11th Cir. 1998)(finding no abuse of discretion where trial court excluded arson expert's testimony because his methodology did not support his conclusion); *State Farm Fire & Cas. Co. v. Steffen*, 948 F. Supp.2d 434, 443-44 (E.D. Pa. 2013) (excluding testimony of fire investigator who (1) "impermissibly relie[d] on . . . [an] untestable 'negative corpus,'" (2) failed to form hypotheses that could be tested by a scientific method, and (3) ran afoul of NFPA 921 § 4.3.8's stern warning against expectation bias); *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F.Supp.2d 844, 849, 851-53 (N.D. Ohio 2004) (excluding expert because he failed to follow NFPA 921 and failed to test his hypothesis regarding the cause of the fire); *Am. Family Ins. Grp. v. JVC Ams. Corp.*, No. 00-27 DSD/JMM, 2001 WL 1618454, at *3-4 (D. Minn. Apr. 30, 2001)(excluding expert testimony where expert did not apply methodology recommended by NFPA 921).

[10] Ex. 1, Jaworski Depo at 70:4-10.

[11] *Id.* at 70:9-21.

{01072337}

**MOTION *IN LIMINE* TO EXCLUDE THE EXPERT TESTIMONY OF STAN JAWORSKI**
*Kendall Dealership Holdings, LLC v. Warren Distribution, Inc.;* Case No. 3:18-cv-00146 HRH
Page 4 of 14

investigation was not NFPA compliant.[12]  The Court should exclude Jaworski's testimony

concerning the cause of the block heaters' fire because he did not adhere to NFPA 921 to

reach a scientifically-based conclusion.  Specifically, Jaworski failed to (2) critically

analyze the data he collected; (3) collect data; (4) analyze the data; (5) develop a hypothesis

based on the data; and (6) test the hypothesis develop and test hypotheses that lead to a

conclusion based on an analysis of the data collected.  Accordingly, the expert opinions

proffered by Jaworski are inadmissible.

## DISCUSSION

### A. Jaworski's Cause and Origin Investigation is Inconsistent with Investigative Protocol and is Therefore not Reliable Under Rule 702.

Courts have deemed proffered expert affidavits to be inadmissible when affidavits

failed to explain the methods and procedures experts used in reaching conclusions, failed

to cite any external source to validate methodology, contained opinions based on

subjective beliefs and unsupported speculation, provided no basis to determine the known

or potential rate of error.[13]  For testimony to be reliable, a court considers

whether methodology consists of testable hypotheses, whether the method has been subject

to peer review, the known or potential rate of error, the existence and maintenance of

---

[12] Ex. 2, Jaworski Expert Report at p. 2, 19, and 21.

[13] *Frosty v. Textron, Inc.*, 891 F. Supp. 551, 554 (D. Or. 1995); *Cramblett v. McHugh*, 2012 WL 7681280, at *1, *9 (D. Or. Nov. 19, 2012), *report and recommendation adopted*, 2013 WL 943525 (D. Or. Mar. 8, 2013) (citing *U.S. v. Rincon*, 28 F.3d 921, 924 (9th Cir. 1994) (indicating expert must describe research "in sufficient detail [to enable] the district court [to] determine if the research was scientifically valid")).

{01072337}
**MOTION *IN LIMINE* TO EXCLUDE THE EXPERT TESTIMONY OF STAN JAWORSKI**
*Kendall Dealership Holdings, LLC v. Warren Distribution, Inc.;* Case No. 3:18-cv-00146 HRH
Page 5 of 14

standards controlling the technique's operation, whether the method is generally accepted, the relationship of the technique to methods which have been established to be reliable, and the qualifications of the expert witness testifying based on the methodology.[14]

In *U.S. v. Zhou*, the court excluded the defendant's expert's testimony despite a claim that he relied on the NFPA for his methodology, when he failed to detail his examinations and testing in accordance with the proper methodology required by the NFPA's guidelines on investigating the cause of a fire.[15] The court ultimately stated: "The mere assertion that [the expert] applied a methodology in conformance with NFPA 921 is insufficient to establish that [the expert's] report is "based on the methods and procedures of science rather than on subjective belief or unsupported speculation."[16]

It has been established that NFPA 921 "requires that hypotheses of fire origin must be carefully examined against empirical data obtained from fire scene analysis and appropriate testing."[17] Here, the report's analysis is devoid of any consideration of Jaworski's hypothesis as applied to empirical data.[18] The mere assertion that Jaworski applied a methodology in conformance with NFPA 921 is insufficient to establish that his report is "based on the methods and procedures of science rather than on subjective belief

---

[14] *See, U.S. v. Zhou*, 2008 WL 4067103, *5 (D. N.J. 2008).
[15] 2008 WL 4067103 (D. N.J. 2008).
[16] *Id.*; *see also, Chester Valley Coach Works, Inc. v. Fisher-Price, Inc.*, 2001 WL 1160012, *8 (E.D. Pa. Aug. 29, 2001) (excluding expert testimony due to the absence of any generally accepted methodology in support of the expert's conclusions).
[17] *Fireman's Fund Ins. Co. v. Canon U.S.A., Inc.,* 394 F.3d 1054, 1058 (8th Cir. 2005).
[18] Ex. 2, Jaworski Expert Report 1-21.

or unsupported speculation[.]"[19]   The methodology applied by Jaworski to perform his investigation is not apparent from his report.

Jaworski's report fails to detail how Jaworski's examinations of the vehicles and any testings conducted resulted in the conclusion he reached, or any hypothesis, elimination of alternative causes or theories, before determining that improper installation was the *only* possible determination.   Courts have  rejected expert opinions where the expert has failed to account for alternative explanations.[20]

Significantly, the report does not detail the proper methodology required by NFPA 921, but, yet, flatly asserts that the investigations by Mr. Shideh did not conform to that guide.   During his deposition, Jaworski agreed he did not address any of his purported hypotheses considered and eliminated in his expert report.[21]   The following are specific examples of Jaworski's failure to comply with NFPA 921, the arguments set out below are applicable to all of the opinions he rendered because they all suffer from the same lack of unreliability:

---

[19] *Zhue*, 2008 WL 4067103, *5 (citing *Schneider ex rel. Est. of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003).

[20] *See Claar v. Burlington N. R.R. Co.*, 29 F.3d 499, 502 (9th Cir. 1994) (holding experts must provide reasons for rejecting alternative hypotheses "using scientific methods and procedures" and the elimination of those hypotheses must be founded on more than "subjective beliefs or unsupported speculation."); *see also Carnegie Mellon Univ. v. Hoffmann-LaRouche, Inc.*, 55 F. Supp. 2d 1024, at 1034 (N.D. Cal. 1999) (finding that a methodology may not be reliable if an expert "fail[s] to address and exclude alternative explanations for the data on which he bases his findings . . . .").

[21] Ex. 1, Jaworski Depo at 110:21-24.

### 1. 2015 Jeep Patriot.

On June 24, 2020, Jaworski inspected three vehicles, including a 2015 Jeep Patriot that had fire damage. His analysis *concluded* (without any hypotheses or process of elimination) the fire that damaged the Jeep Patriot was caused by a damaged starter and charging system cable, after an unknown accident.[22]  Jaworski's report indicated damage to the front of the vehicle and a crushed oil pan, and therefore the charging system cable was compromised.[23]  Jaworski opined the starter motor was damaged from excessive current flow.[24] This determination is not supported by the evidence nor was his methodology in reaching this conclusion evident.[25]

Jaworski failed to determine whether the damages to the solenoid was not from the vehicle engulfing in fire after ignition from a different source, which Mr. Shideh posits as a possibility that must be considered and ruled out under NFPA 921.[26]  Likewise, it is unknown if Jaworski considered whether the fire started in a different location and compromised the starter cable while the battery was still intact.  Nor is there any indication he considered and eliminated the possibility that the crushed oil pan was the result of

---

[22] Ex. 2, Jaworski Expert Report at 11.
[23] *Id.*
[24] *Id.*
[25] Ex. 3, Supplemental Report of Sean Shideh at p. 1.
[26] *Id.*

{01072337}
**MOTION *IN LIMINE* TO EXCLUDE THE EXPERT TESTIMONY OF STAN JAWORSKI**
*Kendall Dealership Holdings, LLC v. Warren Distribution, Inc.;* Case No. 3:18-cv-00146 HRH
Page 8 of 14

transportation from the salvage yard.[27]  Such failure is grounds for exclusion, because his

report does not reliably demonstrate causation.[28]  Jaworski's opinion constitutes

unsupported speculation and mere subjective belief, not good science.[29]

### 2. 2017 Toyota Highlander

Jaworski inspected the vehicle and opined that it caught fire because of dealer

installation error of the block heater.[30]  Without explanation, Jaworski speculates,

> The block heater was found outside of the core hole, I have seen no reports
> in which a correctly installed block heater was found outside of the core hole
> after a thermal event or fire. No explanation for how a fire would cause the
> block heater to fall out of its core hole can be given or has been given by any
> expert. ***It is likely*** that the engine block heater's retaining clip was not fully
> engaged when the heater was installed. This allowed the heater to fall out of
> the core hole, coming to rest on the exhaust pipe by its power cord. Two
> possible competent sources of ignition in the engine compartment were
> identified relating to the block heater being found outside its core hole.[31]

Further, Jaworski admitted at his deposition that there was no information or

evidence the heater actually did slide in and out of the core hole, stating, "No. When they

found it, they say it was fully inserted.[32]  Jaworski's conclusion is purely speculative and

---

[27] Notably, during his deposition Jaworski testified newly disclosed information indicates the
damage to the Jeep Patriot may have occurred while it was being preserved as evidence, and not
as he had concluded. Ex. 1, Jaworski Depo at 19:2-19.  Regardless, he then re-confirmed his
opinion that the cause of the fire was damage to the starting charging system, based on physical
evidence. *Id.* at 45:18-21.

[28] *Claar v. Burlington N. R.R. Co.*, 29 F.3d at 502;  *Carnegie Mellon Univ. v. Hoffmann-LaRouche,
Inc.*, 55 F. Supp. 2d at 1034.

[29] *Id.*

[30] Ex. 2, Jaworski Expert Report at p. 12.

[31] *Id.* (emphasis added).

[32] Ex. 1, Jaworski Depo at 76:6-17.

thus, inadmissible.  As the Tenth Circuit stated, "[i]t is axiomatic that an expert, no matter how good his credentials, is not permitted to speculate."[33]  The Court should grant Kendall's motion and exclude Jaworski's testimony.

### 3.  2017 Corolla CVT, 2017 Sienna, and 2016 Toyota 4-Runner.

Jaworski opined these three vehicle fires were the result of improper installation by the dealers because they failed to apply grease to the block heaters before insertion into the engine block hole, or clipping it properly, where it could be partially inserted.[34]  Jaworski testified he reviewed and considered information from ECI stating installation without grease by dealers is very common when forming his opinion.[35]  When asked if he was not entirely sure that grease was a factor here, Jaworski testified only that defective installation "*appears* to have a strong correlation to thermal events."[36]  However, he did not consider and could not explain why, if there were block heaters inserted into vehicles prior to 2016, without grease, those installations would not have resulted in thermal events.[37]

Further, Jaworski did not make any effort to investigate or consider why installation without grease, a common installation problem, was not addressed in the design of the EBH-913.  Nor did Jaworski form a hypothesis or opinion as to why ECI would have selected a design with a high probability of unsuccessful operation and safety, i.e., that a

---

[33] *Goebel v. Denver and Rio Grande Western R.R. Co.*, 215 F.3d 1083, 1088 (10th Cir.2000).

[34] Ex. 2, Jaworski Expert Report at p. 15-16.

[35] Ex. 1, Jaworski Depo at 85:5-87:2.

[36] *Id.* at 91:19-25 (emphasis added).

[37] *Id.* at 88:25-89:5.

{01072337}
**MOTION *IN LIMINE* TO EXCLUDE THE EXPERT TESTIMONY OF STAN JAWORSKI**
*Kendall Dealership Holdings, LLC v. Warren Distribution, Inc.;* Case No. 3:18-cv-00146 HRH
Page 10 of 14

partial heater insertion and missing grease could result in a fire. There is also no evidence

he considered or performed any testing on whether grease degradation over time was a

factor in causing the fires. Per the NFPA 921, potential ignition sources should be

eliminated from consideration only if there is reliable evidence that they could not be the

ignition source for the fire.[38] Jaworski's failure to follow NFPA 921 mandates, and his

admitted failure of setting forth clear deductive reasoning and logic renders the testimony

unreliable.

### 4.  Failure to Consider Lack of Fire Incidents Before 2016.

There were no remarkable significant reports of fire before 2016 and the

investigations by Transport Canada and Toyota, and there have been no reports of fires

after the launch of the recall and implementation of the new block heater

countermeasures.[39] Jaworski did not consider why the EBH-913 fires were not an issue

until late 2016 and early 2017. Jaworski should have asked why there were no remarkable

reports of fires on so many vehicles equipped with EBH-913 since 2014, the year Toyota

reportedly started using this heater. Jaworski should have considered this information (or

further investigated it if he felt there was not enough information available), formed a

hypothesis, and through a process of elimination explain why the dealers would suddenly

and uniformly started practicing improper installation (grease application, misrouting,

---

[38] NFPA 921 § 18.5.
[39] Ex. 4, Shideh Depo at 104:9-24.

partial heater insertion).[40]  However, when Jaworski was asked if he believed that prior to 2016 all of the block heaters had been perfectly installed, he stated "That is outside the scope of my report.  I don't know."[41]  Jaworski's testimony is unreliable and should be excluded.

**B. Jaworski's Testimony is Not Relevant, and is Misleading and Unduly Prejudicial to Kendall in Any Event.**

For all of the reasons set forth above, Jaworski's testimony is not relevant and will not assist the trier of fact. "Relevant evidence" is defined as that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[42]  Without adhering to the requirements of investigating a fire set forth in NFPA 921, Jaworski's conclusion that the block heater fires were the result of installation error does not make the existence of any fact at issue more or less probable because it is based on pure speculation.  In addition, the admission of such testimony, even if found to have any indicia of relevancy, must be excluded as it will only mislead the jury and unduly prejudice Kendall.  That is, if allowed to proffer his opinion, the jury will be misled as it may tender weight to testimony that is wholly speculative and without foundation, to the detriment of Kendall. Thus,

---

[40] Ex. 3, Shideh Supplemental Report at p. 6-7.
[41] Ex. 1, Jaworski Depo at 84:17-21.
[42] FRE 401.

Jaworski's testimony fails to meet the balancing test of FRE 403 for admission, and must be excluded on this basis as well.[43]

## CONCLUSION

For the foregoing reasons, the Court should grant Kendall's motion *in limine* in its entirety.

DATED this 9th day of July, 2021, at Anchorage, Alaska.

JERMAIN DUNNAGAN & OWENS, P.C.
Attorneys for Kendall Dealership Holdings, LLC


By: */s/ Allison G. Strickland*
      Allison G. Strickland
      Alaska Bar No.: 1005020

---

[43] *Daubert,* 509 U.S. at 595. *See also United States v. Hoac,* 990 F.2d 1099, 1103 (9th Cir. 1993) ("Otherwise admissible expert testimony may be excluded under Fed. R. Evid. 403 if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or undue delay.").

{01072337}

**MOTION *IN LIMINE* TO EXCLUDE THE EXPERT TESTIMONY OF STAN JAWORSKI**
*Kendall Dealership Holdings, LLC v. Warren Distribution, Inc.;* Case No. 3:18-cv-00146 HRH
Page 13 of 14

Case 3:18-cv-00146-HRH   Document 252   Filed 07/09/21   Page 13 of 14

**CERTIFICATE OF SERVICE:**
This is to certify that a true and
correct copy of the foregoing was
served electronically on July 9, 2021
to the following:

Daniel T. Quinn
Marc G. Wilhelm
RICHMOND & QUINN
360 K Street, Suite 200
Anchorage, AK  99501
dquinn@richmondquinn.com
mwilhelm@richmondquinn.com

Cynthia L. Ducey
DUCEY & ASSOCIATES, LLC
745 W 4th Ave., Ste. 425
Anchorage, AK  99501
cld@duceylawak.com

*/s/ Jamie Pierson*
Jamie Pierson