Cynthia L. Ducey, ABA No. 8310161
DUCEY & ASSOCIATES LLC
P.O. Box 220844
Anchorage, AK 99522-0844
Phone: (907) 222-5036
Fax: (907) 222-5026
Email: cld@duceylawak.com

Attorneys for Third Party Defendants Electrical Components International, Inc. and Electrical Components Canada, Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| KENDALL DEALERSHIP HOLDINGS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> WARREN DISTRIBUTION, INC., a Nebraska Corporation, <br><br> Defendant. | Case No. 3:18-cv-00146-HRH |
| WARREN DISTRIBUTION, INC., <br><br> Third Party Plaintiff, <br><br> v. <br><br> ELECTRICAL COMPONENTS INTERNATIONAL, INC., ELECTRICAL COMPONENTS CANADA, INC., and TOYOTA CANADA, INC., <br><br> Third Party Defendants. | |

Opposition to Motion in Limine to Exclude the Expert Testimony of Stan Jaworski [Dkt. 252]
*Kendall Dealership v. Warren Distribution v. Electrical Components /* Case No. 3:18-cv-00146-HRH     Page 1 of 20
Case 3:18-cv-00146-HRH   Document 270   Filed 07/30/21   Page 1 of 20

# OPPOSITION TO MOTION IN LIMINE TO EXCLUDE THE EXPERT TESTIMONY OF STAN JAWORSKI [Dkt. 252]

ECI/ECC and Warren Distribution oppose plaintiff's Motion to Exclude the Testimony of Mechanical Engineer and Certified Automotive Technician, Stanley Jaworski. In summary, Mr. Jaworski meets the requirements to testify under FRE 702 and the *Daubert* standard as he is, by knowledge and training, a mechanical engineer, a certified automotive technician, a certified fire investigation and arson expert. He conducted a cause and origin investigation into the cause of the vehicle fires of which he had access, reviewed all materials in the case and independently conducted an experiment according to the scientific method to confirm his hypothesis. His testimony is based on reliable principles and methods which he reliably applied to the facts of the case. The court should deny the motion in limine.

## FACTS

Warren and ECI/ECC jointly retained mechanical engineer Stanley Jaworski from Robson Forensic to investigate the fires in vehicles ECI/ECC was able to locate, to review all materials in the case, to provide opinions about the cause and origin of the vehicle fires, to determine whether there was a defect in the electronic block heaters. Mr. Jaworski has a Bachelor of Science degree in mechanical engineering. He is a licensed professional engineer in seven states and a contractor for the United States Government. He is a certified fire and explosion investigator and a certified vehicle fire

Opposition to Motion in Limine to Exclude the Expert Testimony of Stan Jaworski [Dkt. 252]
*Kendall Dealership v. Warren Distribution v. Electrical Components /* Case No. 3:18-cv-00146-HRH    Page 2 of 20
Case 3:18-cv-00146-HRH   Document 270   Filed 07/30/21   Page 2 of 20

investigator. He worked for more than 20 years as a certified automotive technician and is an expert in automotive repair and automotive systems.[1]

Mr. Jaworski has investigated fires for the U.S. Army twice, although the nature of his investigations is classified.[2] He has investigated fires at least 12 times.[3] He has lived in a household where there have been engine block heaters in vehicles.[4] He performs investigations on HVAC systems, which involve electrical resistance heaters in water heaters, cabinet heaters, or duct furnace assemblies.[5]

Mr. Jaworski inspected three vehicles that have been placed in issue by Kendall, including a 2015 Jeep Patriot, a 2017 Toyota Tacoma, and a 2017 Toyota Highlander. Those vehicles had been inspected by Sean Shideh, as well as other third-party investigators. The block heaters had been removed from the Jeep and the Highlander. The engine block heater was present in the Toyota Tacoma, but the cord was absent. The block heater was fused in place.[6] Shideh removed the EBH 913 from the Jeep and cannot account for its whereabouts.[7]

Mr. Jaworski opined that the cause of the Jeep fire was precipitated by a pre-fire accident that damaged the starting and charging cable, a system unrelated to the engine block heater. During this accident an object struck the oil pan with sufficient force to damage it. The starting and charging cable was routed in that area and was impinged or

---

[1] *See* **Exhibit A,** Stanley Jaworski's report, Curriculum Vitae at 24-31, attached.
[2] **Exhibit B,** excerpts from Deposition of Stanley Jaworski, 26-29.
[3] *Id.* at 29-30.
[4] *Id.* at 31-32.
[5] *Id.* at 35-36.
[6] *See* **Exhibit A,** Mr. Jaworski's expert report, attached hereto.
[7] *See* Dkt. 130 at p. 18, citing Exh. S, Shideh testimony.

Opposition to Motion in Limine to Exclude the Expert Testimony of Stan Jaworski [Dkt. 252]
*Kendall Dealership v. Warren Distribution v. Electrical Components /* Case No. 3:18-cv-00146-HRH     Page 3 of 20
Case 3:18-cv-00146-HRH   Document 270   Filed 07/30/21   Page 3 of 20

damaged. Physical evidence supported the crushing and damage of that cable. Insulation to the cable was also damaged, exposing a section of bare conductor. The starting and charging system cable is constantly energized and unfused, and not protected from overcurrent. Once damaged, it is a competent ignition source capable of igniting a fire.

Mr. Jaworski hypothesized and later concluded that an exposed section of cable in contact with an engine block or other grounded part of the vehicle would create a short circuit causing an excessive amount of current to flow through the cable causing it to become hot, which can ignite and cause a fire. Mr. Jaworski concluded the damaged Patriot was caused by a damaged starting and charging cable system.[8] In making this determination, Mr. Jaworski examined the physical evidence in the Jeep as well as Shideh's prior report, which found that the block heater and heater pads for the battery had been damaged and destroyed by fire, but:

> The block heater was found placed and installed securely inside an engine port. A wire leading to the block heater showed evidence of shorting. However, the root cause of the short remains unknown. It is conceivable that the wiring harness for the block heater and/or heating pads sustained damages from an accident that occurred before the fire.[9]

Jaworski critiqued Shideh's report because he "…failed to notice that a large, unfused, and constantly energized cable, (starting and charging system cable) had sustained damage in the crash. This cable is located proximately to an area damaged in the crash but was either not noticed or ignored by Shideh."[10] Mr. Jaworski noted that Shideh's investigation of the Jeep was not thorough and failed to indicate that he

---

[8] *See* **Exhibit A,** Jaworski report at 11.
[9] *See id.* at 18.
[10] *Id.*

Opposition to Motion in Limine to Exclude the Expert Testimony of Stan Jaworski [Dkt. 252]
*Kendall Dealership v. Warren Distribution v. Electrical Components /* Case No. 3:18-cv-00146-HRH    Page 4 of 20
Case 3:18-cv-00146-HRH   Document 270   Filed 07/30/21   Page 4 of 20

considered alternative ignition sources or causes of the fire besides the engine block heater and its wiring.[11]

In Mr. Jaworski's investigation of the Toyota Tacoma, he was able to conclude that the heat and fire damage was greatest at the front of the vehicle. The damage was greater in the engine compartment and likely burned longer. In addition, the fact that the vehicle's windshield failed was consistent with the engine compartment being the origin on the fire. However, he could not determine the cause of the Tacoma fire.[12]

Mr. Jaworski's inspection of the Toyota Highlander determined that most of the Highlander was consumed in the fire. However, there was physical evidence that the front of the vehicle reached higher temperatures than the rear of the vehicle. The physical evidence supported a conclusion that the front of the vehicle burned longer and reached higher temperatures. He also concluded the origin of the fire was nearer to the front of the vehicle than the rear and the presence of small pieces of broken windshield glass on the floor of the passenger compartment smoothly melted on the top of the dash supports a conclusion that the fire did not start in the passenger compartment.

In reaching this conclusion, he reviewed an investigation done by a third-party investigator, Tom Saxon. Saxon's report showed the power cable lying across an exhaust pipe with the molded silicone connector intact.[13] From this Mr. Jaworski concluded that defective installation was a likely cause of the fire, since the heater was outside the EBH engine core hole, where it should have been. Mr. Jaworski had seen no reports in which a

---

[11] *Id.*
[12] *Id.* at 11.
[13] *Id.* at 11-12.

Opposition to Motion in Limine to Exclude the Expert Testimony of Stan Jaworski [Dkt. 252]
*Kendall Dealership v. Warren Distribution v. Electrical Components /* Case No. 3:18-cv-00146-HRH    Page 5 of 20
Case 3:18-cv-00146-HRH   Document 270   Filed 07/30/21   Page 5 of 20

correctly installed EBH was found outside an engine core hole after a thermal event and thus no reason a fire would cause an EBH to fall out of its engine core hole except that the retaining clip, which holds the block heater in place, was not fully engaged when the heater was installed. This would allow the heater to fall out of the core hole coming to rest on the exhaust pipe by its power cord. Photographic evidence of the EBH was consistent with it being outside the core hole at the time of the fire.[14]

Mr. Jaworski also found two competent sources of ignition. One was a damaged power cord jacket and insulation caused by direct contact with the hot exhaust pipe, which was melted on the exhaust pipe during vehicle operation. This could cause a short circuit the next time the power cable to the block heater was energized. A second competent ignition source was the engine block heater itself. Once it was no longer inserted in the core, which was a reasonable heat sink, the block heater would become a competent ignition source within the engine compartment the next time it was powered.[15]

Mr. Jaworski conducted his own experiment where he operated the EBH 913 in a similar condition, i.e. with and without an adequate heat sink. He concluded defective installation was the cause of the damage to the Highlander.[16]

Mr. Jaworski also reviewed all documentary evidence in the case, including the five field technical reports done by Toyota Canada, which was the precipitating event that resulted in the Toyota Canada recall of EBH 913. All five field technical reports found

---

[14] *Id.* at 12-13.
[15] *Id.*
[16] *Id.*

Opposition to Motion in Limine to Exclude the Expert Testimony of Stan Jaworski [Dkt. 252]
*Kendall Dealership v. Warren Distribution v. Electrical Components /* Case No. 3:18-cv-00146-HRH    Page 6 of 20
Case 3:18-cv-00146-HRH   Document 270   Filed 07/30/21   Page 6 of 20

installation errors.[17] He also reviewed a report from February 29, 2020, of a Toyota 4Runner owner who contacted the dealer. He concluded that there was also evidence of improper installation of the EBH.[18]

Mr. Jaworski also reviewed all documents Shideh listed as having reviewed. He noted that Shideh stated, "TCI investigators found most of the fires to have origins in the silicone molded female section of the connector to the heater element."[19] Mr. Jaworski noted that Shideh did not identify in which documents these assertions were made, did not identify what methods of fire investigation were used to make this determination, and failed to identify any specific defect that caused the failure.[20] While Shideh offered that EBH 913 samples collected from dealer inventories showing anomalies at the female section of the heater connector, Shideh failed to identify any specific defect that had been proven in a "reliable and repeatable way to cause a fire."[21]

Mr. Jaworski also considered the laboratory duplicative testing conducted between TCI and ECI/ECC, which attempted to duplicate the thermal events exhibited in the engine block heater cord in Canada. He then noted that none of the anomalies alluded to by Shideh during the duplication tests conducted by TCI and ECI/ECC resulted in thermal events.[22] Thermal events could only be recreated by exposing the engine block

---

[17] *See id.* at 14-16.
[18] *Id.* at 16.
[19] *Id.* at 16, quoting the Shideh report.
[20] *Id.* at 16-17.
[21] *Id.* at 17.
[22] *Id.* at 17.

Opposition to Motion in Limine to Exclude the Expert Testimony of Stan Jaworski [Dkt. 252]
*Kendall Dealership v. Warren Distribution v. Electrical Components /* Case No. 3:18-cv-00146-HRH    Page 7 of 20
Case 3:18-cv-00146-HRH   Document 270   Filed 07/30/21   Page 7 of 20

heater cord silicone plug to temperatures well above the design rating, i.e. at temperatures above 150 degrees Centigrade.

Mr. Jaworski considered that every cord that is manufactured by ECI is subject to a high potential test, where the cord's conductors are energized to 1500 volts. This evaluates the condition of the insulation and uncovers manufacturing defects that would yield a short circuit within the cord.[23] The high potential test, also known as the Mega ohm test or megger test, is a reliable and industrially accepted standard method of evaluating electrical insulation. Mr. Jaworski noted, "This is an effective test that will reliably and repeatedly reveal deteriorated or defective electrical insulation," citing "*A Stitch in Time" The Complete Guide to Electrical Insulation Testing*.[24]

While Shideh concluded that there were no reports of fires signifying a trend within a specific Toyota model, family, or certain dealer installation procedure, Mr. Jaworski concluded this statement was false, since the trend related to thermal events to dealer installation procedure was faulty, and the five TCI field reports indicated installation defects present.[25] Shideh failed to conduct any scientific analysis that would be repeatable by a peer to identify a specific manufacturing defect in the EBH 913 or its cable as the cause of the vehicle fires. By contrast, Mr. Jaworski conducted an experiment, prior to completing his conclusion that is repeatable, to test his hypotheses.

Specifically, Mr. Jaworski inspected an exemplar EBH 913 provided by the manufacturer and created an experiment, according to the scientific method, in which he

---

[23] *Id.* at 17.
[24] *Id.* at 17.
[25] *Id.* at 19.

Opposition to Motion in Limine to Exclude the Expert Testimony of Stan Jaworski [Dkt. 252]
*Kendall Dealership v. Warren Distribution v. Electrical Components /* Case No. 3:18-cv-00146-HRH    Page 8 of 20
Case 3:18-cv-00146-HRH   Document 270   Filed 07/30/21   Page 8 of 20

installed a thermocouple in the molded silicone connector and monitored the temperature inside the connector while operating the exemplar engine block heaters under three different conditions: (1) while fully in contact with an adequate heat sink, (2) while partially in contact with an adequate heat sink, and (3) while not in contact with an adequate heat sink. Mr. Jaworski concluded that when the EBH 913 was operated in full contact with an adequate heat sink, the internal temperature of the molded silicone connector never exceeded its rated temperature. When the EBH 913 was not in contact with the heat sink, he learned that the surface temperature of the engine block heater reached 1080 degrees Fahrenheit before he de-energized it. This supports a conclusion that when the block heaters were in contact with an adequate heat sink, in other words when properly installed, the connectors did not exceed their rated temperatures.[26]

## ARGUMENT

**I.    Mr. Jaworski's Testimony is Admissible Under FRE 702.**

This court has already reviewed the *Daubert* standard for admission of expert testimony regarding Shideh.[27] FRE 702 governs the admissibility of expert testimony and provides that expert testimony is admissible if:

> (1) the witness is sufficiently qualified as an expert by knowledge, skill, experience, training, or education; (2) the scientific, technical or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (3) the testimony is based on sufficient facts or data; (4) the testimony is the product of reliable

---

[26] *Id.* at 10; *see also* **Exhibit C,** results of testing conducted by Jaworski.
[27] *See* court's Order denying motion to strike Shideh at Dkt. 222; *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579 (1993).

Opposition to Motion in Limine to Exclude the Expert Testimony of Stan Jaworski [Dkt. 252]
*Kendall Dealership v. Warren Distribution v. Electrical Components /* Case No. 3:18-cv-00146-HRH    Page 9 of 20
Case 3:18-cv-00146-HRH   Document 270   Filed 07/30/21   Page 9 of 20

principles and methods; and (5) the expert has reliably applied the relevant principles and methods to the facts of the case.[28]

The court performs a gatekeeping role to ensure the testimony is both relevant and reliable under FRE 702.[29] Relevancy requires the evidence logically advance a material aspect of the party's case.[30] Reliability requires the expert's testimony have a reliable basis and the knowledge and experience of the relevant discipline.[31]

This court has found that it assesses the expert's reasoning and methodology using as appropriate criteria testability, publication, and peer reviewed literature, known or potential error rate, and general acceptance.[32] These factors are meant to be helpful, not definitive, and the trial court had discretion to determine how to test reliability and whether the testimony is reliable based on the circumstances of the case. Objections to inadequacies of an expert's analysis are more appropriately considered going to the weight of the evidence rather than admissibility.[33] Rejection of expert testimony is the exception rather than the rule.[34]

This court ruled that Shideh could testify to a correlation alleged between the vehicle fires and a manufacturing defect but limited his testimony because Shideh had no

---

[28] *Id.,* citing *City of Pomona v. SQM North America Corp.,* 750 F.3d 1036, 1043 (9th Cir. 2014).
[29] *United States v. Ruvalcaba-Garcia,* 923 F.3d 1183, 1188 (9th Cir. 2019), quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 597 (1993).
[30] Dkt. 222 at 4-5.
[31] *Id.* at 5.
[32] *Id.*
[33] *Id.*, citing *Hemmings v. Tidyman's Inc.,* 285 F.3d 1174, 1188 (9th Cir. 2002).
[34] Dkt. 222 at 6.

Opposition to Motion in Limine to Exclude the Expert Testimony of Stan Jaworski [Dkt. 252]
*Kendall Dealership v. Warren Distribution v. Electrical Components /* Case No. 3:18-cv-00146-HRH  Page 10 of 20
Case 3:18-cv-00146-HRH   Document 270   Filed 07/30/21   Page 10 of 20

scientific principles, technology, or specialized knowledge that would answer the question about the failure rate.[35]

Mr. Jaworski is qualified by education, background, and experience to testify about both cause and origin of the vehicle fires, electrical resistance heaters and whether they are defective. He meets the requirements of FRE 702(a). As noted above, he is a licensed professional engineer in seven states with a degree in mechanical engineering. He has more than 20 years' experience as a certified automotive technician. He is a certified fire and arson investigation and a certified vehicle fire investigator. He has worked on fire cases and is experienced in electrical resistance heaters. He has testified multiple times in state and federal court. He is well-qualified to opine on the cause and origin of the vehicle fires and on electronic block heaters.[36]

Mr. Jaworski's testimony will assist the trier of fact in determining the evidence or to determine a fact in issue, whether the block heaters contained manufacturing or design defects that caused a thermal event or a fire in any of the vehicles and whether the product is defective are at issue in the complaint. The testimony is relevant under FRE 401. Mr. Jaworski's testimony would have a tendency to make these facts more or less probable than it would be without the evidence and his testimony is more probative than prejudicial under FRE 403.

Mr. Jaworski's opinions and conclusions are based on sufficient data, since he personally inspected three of the vehicles, including all available physical evidence. He

---

[35] Dkt. 222 at 10.
[36] His qualification are starkly more robust than those in *U.S. v. Zhou,* 2008 WL 4067103 (D.N.J.) (Aug. 25, 2008) (unpublished opinion not opposed by defense).

Opposition to Motion in Limine to Exclude the Expert Testimony of Stan Jaworski [Dkt. 252]
*Kendall Dealership v. Warren Distribution v. Electrical Components /* Case No. 3:18-cv-00146-HRH   Page 11 of 20

also reviewed all documentary evidence available, and conducted an experiment on an exemplar EBH 913 that would mimic conditions with or without an adequate heat sink and thus demonstrate his hypothesis of faulty installation. Indeed, his investigation is more robust, since he included a repeatable experiment based on the scientific method, which Shideh did not. The court should find his opinions are based on sufficient data.[37]

Kendall argues that since he applied NFPA 921, he was required to develop and test "all feasible hypotheses" and he allegedly failed to do so and thus is unreliable. Kendall claims he should have determined the fires as undetermined, citing NFPA 921, section 18.6.[38] Kendall argues, for example, because all possible causes of the Jeep fire were not considered and ruled out in his report it should be excluded. However, Kendall has not only misquoted NFPA 921, section 18.6.2.3, but has taken the entire section out of context. Kendall's quote that all *feasible* hypotheses must be tested is plainly wrong. Section 18.7 states as follows with respect to selecting the final hypothesis: "Once the hypotheses regarding the origin of the fire have been tested, the investigator should review the entire process, to ensure that all *credible* data are accounted for and all *credible* alternate origin hypotheses have been considered and eliminated."[39]

Kendall also claims an investigator must follow a six step process to investigate, however, the NFPA provides this by way of example only and then expands on a number of ways an investigation can be properly conducted. As shown above, Mr. Jaworski's

---

[37] Unlike the decision in *Zhou,* Mr. Jaworski's report is not based on a critique of the other expert's motives, which was part of the deciding factor in *Zhou,* 2008 WL 4067103 at *7.
[38] Dkt. 252 at 4, 8.
[39] **Exhibit D,** excerpts from NFPA 921 at 18.7.

Opposition to Motion in Limine to Exclude the Expert Testimony of Stan Jaworski [Dkt. 252]
*Kendall Dealership v. Warren Distribution v. Electrical Components /* Case No. 3:18-cv-00146-HRH  Page 12 of 20
Case 3:18-cv-00146-HRH   Document 270   Filed 07/30/21   Page 12 of 20

review and conclusions complied since he identified the issue, collected all information/evidence, analyzed it, developed a hypothesis and tested it.[40]

Kendall claims NFPA requires the hypothesis to be examined against empirical data. A second claim is that Mr. Jaworski did not adhere to NFPA 921 methodology and thus admission of his testimony would be more prejudicial than probative. These arguments lack merit. Significantly, NFPA 18.6.2.3 discusses experimental testing and states: "Experiments can be conducted to test the hypothesized origin. If the experimental results match the damage at the scene, the experiment can be said to support the hypothesis."[41] Mr. Jaworski applied reasonably reliable principles, i.e. the scientific method, to test his overall hypotheses of the case, that is, whether there was a reasonable basis to conclude the improper installation of the EBH was a causal factor in the thermal events in vehicle fires. The experiment described above and in his report, which is expressly listed in the NFPA at section 18.6.2.3 as a means of confirming the hypothesis satisfies NFPA methodology to confirm his hypothesis. The results confirmed that improper installation would expose the EBH to temperatures exceeding the rated temperature of the EBH. According to the NFPA 921 standards this is sufficient to corroborate his working hypothesis.

The NFPA has a special section on motor vehicle fires at Chapter 27, motor vehicle fires.[42] That chapter specifically cites as possible sources of vehicle fires aftermarket equipment that is inadequately protected, sized, or secured wiring, such as

---

[40] Dkt 252 at 3; *see also* **Exhibit D,** excerpts from NFPA 921 at 19.1-19.7.
[41] *See* **Exhibit D,** excerpts from NFPA 921, Section 18.6.
[42] *Id.* Chapter 27.

Opposition to Motion in Limine to Exclude the Expert Testimony of Stan Jaworski [Dkt. 252]
*Kendall Dealership v. Warren Distribution v. Electrical Components /* Case No. 3:18-cv-00146-HRH Page 13 of 20
Case 3:18-cv-00146-HRH   Document 270   Filed 07/30/21   Page 13 of 20

Mr. Jaworski found when reviewing the TCI field reports.[43] Hot surfaces within the vehicle such as a hot manifold are also a cause of vehicle fires, which was mentioned in the TCI field reports.

Kendall claims that Mr. Jaworski's testimony regarding the Jeep 2015 is speculative, since Kendall claims Mr. Jaworski retreated from his opinion that the Jeep suffered pre-accident damage.[44] However, Jaworski testified at his deposition he had not seen certain photos since he completed his report showing the underneath of the vehicle, so while he did not know for certain when and where the damage occurred, it was a reasonable assumption that adequate preservation methods were employed by the professionals who preserved the Jeep that would have prevented the crushing to the cable before the fire.[45] This is not speculation, but a reasonable inference.

Kendall also claims that Mr. Jaworski's analysis of the Jeep began without a hypothesis, that the Jeep fire was caused by a damaged starter and charging cable system.[46] However, this hypothesis was promoted by Mr. Shideh and confirmed with ample physical evidence of a smashed and flattened charging system cable and other damage to the vehicle. Photographic evidence showed physical damage to the starter motor solenoid from excessive current flow, based on his expertise as an automotive technician and engineer. His conclusion is specifically listed as a potential cause for a vehicle fire in NFPA 921, that is, electrical sources, including the battery and components

---

[43] *See id.*
[44] *See* Dkt. 252 at 8-9.
[45] **Exhibit B,** Jaworski deposition at 48-50.
[46] Dkt. 252 at 8.

Opposition to Motion in Limine to Exclude the Expert Testimony of Stan Jaworski [Dkt. 252]
*Kendall Dealership v. Warren Distribution v. Electrical Components /* Case No. 3:18-cv-00146-HRH   Page 14 of 20
Case 3:18-cv-00146-HRH   Document 270   Filed 07/30/21   Page 14 of 20

connected to the battery, as potential ignition sources.[47] It also includes wiring conductors such as battery output and starter circuits.[48] The starter and charging cable were initially listed as a cause by Shideh. The conclusion that the cause and origin was the area of the battery is supported by the Progressive's cause and origin investigator, of which Shideh and Federated were quite aware.[49] There is no evidence that the accident occurred on transportation from the salvage yard. That theory is speculation.

Shideh reported to Brian Murphy at Federated he saw evidence the vehicle hit or ran over something and the damages were caused by that incident, which would have led to the fire occurring.[50] Michael Bushke, the manager of Kendall Auto in Fairbanks, also believed that the battery was the problem and cause of the fire and reported this to Brian Murphy, Rich Hazel at Kendall, as well as Morris Smith at Kendall.[51] Jentry Crain at ESI issued a report to Progressive that also indicated the point of origin was the vehicle's battery and the ignition source was unconfirmed but likely the battery heater.[52] Crain indicated there was no other possible ignition source found at the point of origin and incendiary causes were considered and ruled out, natural causes were considered, but no

---

[47] **Exhibit D,** excerpts from NFPA 921, section 27.4.2, electrical sources.
[48] *Id.* at section 27.4.2.4.
[49] *See* **Exhibit E,** email from Brian Murphy to Morris Smith at Kendall Auto, dated 11/10/16, stating: Progressive sent a cause and origin investigator and they have found the fire was strongest/hottest in the area of the battery signifying this was the origin on the fire.
[50] *See* **Exhibit F,** email from Brian Murphy to Glenda Wiser at Progressive, dated 1/18/17.
[51] *See* **Exhibit G,** email from Michael Bushke to Brian Murphy, Rich Hazel, and Morris Smith, dated 12/8/16.
[52] *See* **Exhibit H,** ESI Investigative Report by Jentry Crain, dated 11/10/16.

Opposition to Motion in Limine to Exclude the Expert Testimony of Stan Jaworski [Dkt. 252]
*Kendall Dealership v. Warren Distribution v. Electrical Components /* Case No. 3:18-cv-00146-HRH Page 15 of 20
Case 3:18-cv-00146-HRH Document 270 Filed 07/30/21 Page 15 of 20

evidence located to support that scenario, and that "all surrounding evidence and patterns suggest the battery heater was the most likely cause of this fire."[53]

With respect to the 2017 Toyota Highlander, Kendall has also misrepresented Jaworski's deposition testimony. Kendall confuses testimony about the Highlander, which Mr. Jaworski inspected, with his testimony about a Toyota Canada field report, about a Toyota Camry. Kendall claims at his deposition Mr. Jaworski admitted there was no information that the block heater actually slid in and out of the EBH core hole.[54] The argument about the Highlander is incorrect for several reasons. The deposition excerpt Kendall cites to refers to the 2016 Camry HV_6656, not the Highlander.[55] Jaworski observed evidence of mechanical damage to the body of the EBH 913 in the Camry. The retaining clip appeared to be deformed and exhibited marks consistent with a grinding tool. He also noted the block heater cartridge was fully inserted, but the clip was not in place and could be slid in and out of position.[56] Mr. Jaworski also expressly stated that he read the report, viewed the photographs and the physical evidence differed in the photographs from the conclusion.[57]

### 2017 Corolla CVT, 2017 Sienna, and 2016 Toyota 4Runner

Kendall again misrepresents Mr. Jaworski's testimony and reinvents his opinions regarding the defective installation as being a "very common" problem among dealers

---

[53] *Id.* at FED000983.
[54] Dkt 252 at 9.
[55] *See* **Exhibit B,** Jaworski deposition at 71-76.
[56] **Exhibit A,** Jaworski report at 14.
[57] **Exhibit B,** Jaworski deposition at 78-79.

Opposition to Motion in Limine to Exclude the Expert Testimony of Stan Jaworski [Dkt. 252]
*Kendall Dealership v. Warren Distribution v. Electrical Components /* Case No. 3:18-cv-00146-HRH   Page 16 of 20
Case 3:18-cv-00146-HRH   Document 270   Filed 07/30/21   Page 16 of 20

according to him.[58] However, Mr. Jaworski based his opinions on the five Canadian Field investigations and never testified that defective installation was a ***common*** problem among dealers, nor did he extrapolate that it was a common occurrence.[59] Given that Kendall refused to make any information about fires prior to 2016 available in discovery, Kendall cannot now blame Mr. Jaworski for failing to enlarge the scope of his report to include a design analysis of the EBH to include an analysis of heat paste installation.[60]

Kendall claims, citing the NFPA 921, that potential ignition sources should be eliminated only if there is reliable evidence that they could not be an ignition source for the fire. Mr. Jaworski considered potential ignition sources and considered that high pot testing was conducted on every single EBH 913. The high potential test, also known as a Mega ohm tester, is a reliable and industrially accepted method of evaluating electrical insulation that would reveal deteriorated or defective electrical insulation and would also reveal if two wires were touching before they left the plant.[61] This empirical data could be fully credited by Mr. Jaworski in reaching his conclusions.

Mr. Jaworski testified that he considered, with respect to the Jeep, that any energized circuit in the vehicle may have been a cause of the fire.[62] He also considered that the fire may not have started in the engine compartment.[63] With respect to the Toyota Highlander, he considered that the fire may have potentially begun in any

---

[58] *See* Dkt. 252 at 10.
[59] **Exhibit B,** Jaworski deposition at 91-92.
[60] Dkt. 252 at 14.
[61] **Exhibit B,** Jaworski deposition at 118-119.
[62] *Id.* at 101.
[63] *Id.* at 102.

Opposition to Motion in Limine to Exclude the Expert Testimony of Stan Jaworski [Dkt. 252]
*Kendall Dealership v. Warren Distribution v. Electrical Components /* Case No. 3:18-cv-00146-HRH Page 17 of 20
Case 3:18-cv-00146-HRH   Document 270   Filed 07/30/21   Page 17 of 20

compartment of the vehicle. He also considered that any energized ignition or any energized electrical source was also a potential cause of ignition. He was also open to other causes if he was shown something that got his attention for lack of a better description.[64] He considered and ruled out a number of other alternative hypotheses in coming to his conclusions.[65] The report adequately sets out the basis for his opinions on the Corolla, the Sienna, and the 4Runner.

Kendall moves as a basis for exclusion failure to consider lack of fire incidents before 2016, which is remarkable since Warren sought this information in its Request for Production No. 4 and Kendall refused to provide it.[66] Having refused to provide it voluntarily in initial disclosures and having refused to provide it in response to discovery, Kendall can have no complaint that it was not incorporated into Mr. Jaworski's report.

Finally, the cases cited by Kendall are inapposite and do not support excluding Mr. Jaworski's testimony.[67] None of the cases cited establish that Mr. Jaworski applied improper NFPA methodology or that his testimony should be excluded.

---

[64] *Id.*
[65] *Id.* at 101-112.
[66] Dkt 130 at 13-14, including Exh. M, Kendall's response to RFP No. 4.
[67] *Domingo ex rel. Domingo v. T.K.,* 289 F.3d 600 (9th Cir. 2012) (court determined outlier theory of medical malpractice not cited in any research excludable); *McClellan v. I-Flow Corp.,* 710 F.Supp. 2d 1092, 1100 (D. Oregon 2010) (fact that expert testimony and products liability action did not establish causation to a scientific or medical certainty did not preclude admission of testimony on general causation); *Manuel v. MDOW Insurance Co.,* 791 F.3d 838, 846-847 (8th Cir, 2015) (admission of fire investigator's testimony not plain error and jury could have found investigator's definition of "negative corpus" not different than NFPA and methodology otherwise reliable); *Michigan Millers Mutual Insurance Corp. v. Ben Field,* 140 F.3d 915, 920-21 (11th Cir. 1998) (excluding fire investigator's expert testimony where he could not identify the source of ignition of fire, performed no tests, took no samples, was unable to explain his methodology of eliminating a light fixture as possible source, could not rationally explain his conclusions); *State Farm Fire & Casualty Co. v. Steffen,* 948 F.Supp. 2d 434, 442-43 (E.D. Pa.

Opposition to Motion in Limine to Exclude the Expert Testimony of Stan Jaworski [Dkt. 252]
*Kendall Dealership v. Warren Distribution v. Electrical Components /* Case No. 3:18-cv-00146-HRH   Page 18 of 20
Case 3:18-cv-00146-HRH   Document 270   Filed 07/30/21   Page 18 of 20

## CONCLUSION

Mr. Jaworski's testimony is admissible under FRE 702 and *Daubert,* since he is qualified by education, training and experience to testify on the subject matters of his report. His testimony is relevant to issues disputed in the litigation about EBH 913. He examined the available physical evidence, all documentary evidence, Shideh's prior reports, other third party expert reports, duplication testing by ECI/ECC and Toyota Canada following reports of 5-7 thermal events in Toyota vehicles, as well as five field investigative reports of the thermal events and conducted his own scientific experiment, which mimicked the conditions that would occur if an EBH had and did not have an adequate heat sink, i.e., proper or improper installation. He applied the results of his investigation, experiment and document review, as well as the NFPA 921 standards to his opinions and conclusions. His testimony is admissible under FRE 702, since it will assist the trier of fact.

His testimony is the product of reliable principles and methods, observable physical evidence, according to NFPA standards and the scientific method. Mr. Jaworski adequately and properly applied those standards and included those in his report in a proper and substantiated way, and he should be able to testify to those opinions and his report. The motion to exclude his testimony should be denied.

---

2013) (fire investigator's expert testimony excluded when he could not determine the first fuel ignited, his ignition sequence was rooted in supposition, he assumed combustible materials without direct or circumstantial evidence of same and limited his analysis of the data improperly).

Opposition to Motion in Limine to Exclude the Expert Testimony of Stan Jaworski [Dkt. 252]
*Kendall Dealership v. Warren Distribution v. Electrical Components /* Case No. 3:18-cv-00146-HRH  Page 19 of 20
Case 3:18-cv-00146-HRH   Document 270   Filed 07/30/21   Page 19 of 20

DATED this 30th day of July, 2021, at Anchorage, Alaska.

    DUCEY & ASSOCIATES LLC
Attorneys for Third Party Defendants
Electrical Components International, Inc. and
Electrical Components Canada, Inc.

/s/ Cynthia L. Ducey
ABA No. 8310161

**CERTIFICATE OF SERVICE**

I hereby certify that on July 30, 2021, a copy of the foregoing document was served electronically on:

Gary C. Sleeper
Allison G. Strickland
Kendra E. Bowman
Jermain Dunnagan & Owens, P.C.
3000 A Street, Suite 300
Anchorage, AK 99503
GCSleeper@jdolaw.com
astrickland@jdolaw.com
kbowman@jdolaw.com

Daniel T. Quinn
Marc G. Wilhelm
Richmond & Quinn
360 K Street, Suite 200
Anchorage, AK 99501
dquinn@richmondquinn.com
mwilhelm@richmondquinn.com

/s/ Cynthia L. Ducey

4831-6067-3523, v. 1

Opposition to Motion in Limine to Exclude the Expert Testimony of Stan Jaworski [Dkt. 252]
*Kendall Dealership v. Warren Distribution v. Electrical Components /* Case No. 3:18-cv-00146-HRH Page 20 of 20
Case 3:18-cv-00146-HRH   Document 270   Filed 07/30/21   Page 20 of 20