WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| KENDALL DEALERSHIP HOLDINGS, LLC,<br><br>                    Plaintiff,<br><br>  vs.<br><br>WARREN DISTRIBUTION, INC.,<br><br>                    Defendant.<br><br>WARREN DISTRIBUTION, INC.,<br><br>                    Third-party plaintiff,<br><br>  vs.<br><br>ELECTRICAL COMPONENTS INTERNATIONAL, INC. and ELECTRICAL COMPONENTS CANADA, INC.<br><br>                    Third-party defendants. | Case No. 3:18-cv-0146-HRH |

O R D E R

Motion to Amend Complaint[1]

Plaintiff Kendall Dealership Holdings, LLC ("Kendall") moves to amend its complaint. This motion is opposed.[2] Oral argument has not been requested and is not deemed necessary.

---

[1] Docket Nos. 316 and 329.

[2] Docket Nos. 322, 323, and 324.

ORDER – Motion to Amend Complaint      - 1 -

Background

This case arises from plaintiff Kendall's allegation that the approximately 8,000 engine block heaters that it purchased from defendant and third-party plaintiff Warren Distribution, Inc. ("Warren") were defective.[3] Electrical Components Canada, Inc. ("ECC") allegedly manufactured the heaters and Electrical Components International, Inc. ("ECI") allegedly sold them to Warren.[4] Various models of the heater have been at issue in this case: the 913 heater; the second model, the 913-1 heater; and the third model, the 913-2 heater.[5] Originally, Kendall only alleged that the 913 and 913-1 models were defective; prior to 2022 Kendall never alleged that the 913-2 model was defective.[6]

Based on its allegations that the 913 and 913-1 models were defective, Kendall filed its original complaint asserting claims of breach of contract, violation of Alaska's Unfair Trade Practices and Consumer Protection Act, breach of the implied warranty of merchantability, and breach of the implied warranty of fitness for a particular purpose.[7] The court issued an initial scheduling and planning order on August 3, 2018.[8] An amended scheduling and planning order was first issued in February 2019, followed by a second amended scheduling and planning order in August 2019.[9]

---

[3] Order on Motion for Summary Judgment at 2, Docket No. 244.

[4] Id.

[5] Id. at 2-4.

[6] Id. at 4.

[7] Complaint at 4-6, ¶¶ 16-37, Exhibit A, Notice of Removal, Docket No. 1-1.

[8] Docket No. 11.

[9] Docket Nos. 36 and 55.

Under the most recent scheduling order, motions to amend were to be filed and served no later than the date specified in Local Civil Rule 16(c)(2) (2018): that is, no later than sixty days from the date of entry of the pretrial scheduling order.[10] In other words, the deadline for filing a motion to amend was October 20, 2019, which was sixty days from the date of entry of the second amended scheduling and planning order.

According to Kendall, in late 2021 and early 2022, fires occurred in vehicles containing the 913-2 model heater.[11] Based on these events, Kendall filed the pending motion to amend on March 9, 2022, over two years after the deadline to file such a motion had passed.[12] Kendall did not file a contemporaneous motion to amend the deadlines in the court's scheduling and planning order. Kendall now seeks to amend its complaint to add "new claims for breach of warranty, breach of contract, and violation of [the] Alaska Unfair Trade Practices and Consumer Protection Act ... [and to] update[] the amount of damages to include amounts suffered by Kendall since the filing of the initial complaint."[13]

In its proposed amended complaint, Kendall claims that "Warren provided Kendall with new [913-2] block heaters in March 2018 that were designed and manufactured as a countermeasure to the recalled block heaters" and that "Warren specifically told Kendall that the countermeasure block heater was 'safe.'"[14] Kendall further claims that "[u]pon information and belief, the countermeasure block heaters were improperly manufactured

---

[10] Docket No. 55 at 6.

[11] Motion to Amend Complaint at 5, Docket No. 316.

[12] Id. at 7.

[13] Id. at 1-2.

[14] Proposed First Amended Complaint at 4, ¶¶ 17-18, Exhibit 1, Motion to Amend Complaint, Docket No. 316-1.

ORDER – Motion to Amend Complaint - 3 -

and have caused several fires due to the defect[,]" that these countermeasure heaters "were defective," and that "[s]tatements made by Warren regarding the safety of the counter-measure block heater were false."[15] The allegations that comprise Kendall's new claims for breach of contract, violation Alaska's Unfair Trade Practices and Consumer Protection Act, breach of the implied warranty of merchantability, and breach of the implied warranty of fitness for a particular purpose are largely identical to those in Kendall's original complaint.[16] However, there is one change common to each claim: in every instance where "engine block heaters" were previously referenced, the allegations now read, "engine block heaters including countermeasure block heaters."[17] Kendall also alleges that the amount of damages suffered is now based on those incurred from the sale of the countermeasure block heaters, in addition to those incurred from the sale of the original block heaters.[18]

Discussion

Rule 15(a), Federal Rules of Civil Procedure, governs the amendment of pleadings before trial. Where, as here, a motion to amend is filed after the court has entered a scheduling and planning order that establishes a deadline for amending pleadings, then "the motion 'is governed first by Rule 16(b), and only secondarily by Rule 15(a).'" Cervantes v. Zimmerman, Nos. 17-cv-1230-BAS-NLS & 18-cv-1062-BAS-NLS, 2019 WL 1129154, at *2 (S.D. Cal. Mar. 12, 2019). See also Coleman v. Quaker Oats Co., 232 F.3d 1271, 1294 (9th Cir. 2000); Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 607-08 (9th

---

[15]Id. at 4-5, ¶¶ 19-21.

[16]Id. at 5-7, ¶¶ 22-43.

[17]Id.

[18]Id.

Cir. 1992). The scheduling order limits the time to amend pleadings. Fed. R. Civ P. 16(b)(3)(A). The "schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).

"Good cause" is a more stringent standard than the Rule 15 inquiry. AmerisourceBergen Corp. v. Dialysist W., Inc., 465 F.3d 946, 952 (9th Cir. 2006). This standard "primarily considers the diligence of the party seeking the amendment." Johnson, 975 F.2d at 609. "The district court may modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'" Id. (quoting Fed. R. Civ. P. 16 advisory committee's notes to 1983 amendment). "[T]he existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, [but] the focus of the inquiry is upon the moving party's reasons for seeking modification.... If that party was not diligent, the inquiry should end." Id. Modification should not be permitted. Zivkovic v. S. Cal. Edison Co., 302 F.3d 1080, 1087 (9th Cir. 2002).

Kendall argues that it should now be permitted to amend its complaint. Kendall claims that it was not and could not have become aware of the alleged defect in the 913-2 heater until late 2021 and early 2022, when vehicles containing the 913-2 heater caught fire.[19] "Despite efforts to comply with the deadline for amending complaints, Kendall could not have reasonably foreseen at that time that the 913-2 units were defective" because its experts only inspected vehicles equipped with the 913 model, "in light of Toyota Canada's findings that the 913 contained a manufacturing defect."[20] Kendall claims

---

[19]Motion to Amend Complaint at 5, Docket No. 316.

[20]Id.

ORDER – Motion to Amend Complaint                                                                                      - 5 -

Case 3:18-cv-00146-HRH   Document 330   Filed 05/02/22   Page 5 of 10

that it diligently sought to file its motion to amend after learning of these fires.[21] Kendall alleges that these facts establish "good cause" to amend after the deadline in the scheduling and planning order.[22]

Defendants oppose. Warren alleges that Kendall is not entitled to amend its complaint under Rule 16 because there is no good cause for amendment of the court's pretrial deadlines.[23] ECC/ECI additionally points out that Kendall moved to amend the complaint without moving to amend the scheduling and planning order.[24] ECC/ECI argues that the court has discretion to deny as untimely such a motion filed after the deadline set forth in the scheduling order where there exists no attendant request to modify the pretrial order.[25]

When a movant seeks to amend the complaint but does not seek leave to amend the scheduling and planning order, the court can consider the movant's motion to amend complaint as a motion to amend the scheduling order. See Copper River Seafoods, Inc. v. Chubb Custom Ins. Co., No. 3:16-cv-00039-TMB,, 2018 WL 6252493, at *2 (D. Alaska Aug. 8, 2018). In the alternative, the court can simply deny a motion to amend filed after the scheduling order's cut-off date when a motion to amend the scheduling order is not also filed. Estate of Shane Tasi v. Municipality of Anchorage, No. 3:13-cv-00234-SLG, 2016 WL 4942323, at *1 (D. Alaska Apr. 3, 2016). In both Estate of ShaneTasi and Copper River Seafoods, the court construed the motions to amend complaint as motions to amend the scheduling order, and considered whether the movants had demonstrated good

---

[21]Reply to Opposition to Motion to Amend Complaint at 5, Docket No. 329.

[22]Motion to Amend Complaint at 5, Docket No. 316.

[23]Warren's Opposition to Motion to Amend Complaint at 7, Docket No. 322.

[24]ECC/ECI's Opposition to Motion to Amend Complaint at 6, Docket No. 323.

[25]Id. at 7.

cause to amend under Rule 16. The court will here consider Kendall's motion to amend complaint as a motion to amend the court's scheduling and planning order. It is preferable to resolve issues on the merits rather than on technicalities.

The court first considers whether Kendall has established that it diligently sought amendment and therefore whether Kendall has established "good cause" to amend under Rule 16. "Central to this required showing of diligence is whether the movant discharged [the] obligation under Rule 16 to collaborate with the district court in managing the case." Jackson v. Laureate, Inc., 186 F.R.D. 605, 607 (E.D. Cal. 1999).

> [T]o demonstrate diligence under Rule 16's "good cause" standard, the movant may be required to show the following: (1) that [the movant] was diligent in assisting the Court in creating a workable Rule 16 order, ... (2) that [the movant's] noncompliance with a Rule 16 deadline occurred or will occur, notwithstanding ... diligent efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference, ... and (3) that [the movant] was diligent in seeking amendment of the Rule 16 order, once it became apparent that [the movant] could not comply with the order....

Id. at 608 (citations omitted). See also Copper River Seafoods, Inc., 2018 WL 6252493, at *2 (applying Jackson's three-factor test).

Kendall does not address whether it diligently assisted the court in the creation of a workable Rule 16 order, nor do the defendants contend that Kendall was not diligent in assisting the court to create a workable Rule 16 order. Notwithstanding, the record shows that Kendall's noncompliance with the scheduling and planning order was due to the recency of the vehicle fires which Kendall argues were caused by defective 913-2 heaters. These fires occurred after the deadline in the scheduling and planning order and were not reasonably foreseeable or anticipatory at the time of the Rule 16 scheduling conference.

Yet the record also shows that Kendall first learned of these fires in November of 2021.[26] Kendall filed a motion for relief from judgment on January 28, 2022,[27] which was denied by the court's order of April 20, 2022.[28] On March 9, 2022, Kendall filed its motion to amend. That motion could not have been filed by October 20, 2019, nor could it have been filed before November of 2021. The court finds that Kendall was reasonably diligent in moving to amend. That conclusion does not end our inquiry, as explained below.

Kendall argues that the defendants will suffer either no prejudice or only minimal prejudice stemming from the delay of trial and the reopening of discovery for just the 913-2 model, and that any prejudice is outweighed by potential injustice to Kendall.[29] Warren argues that amendment would cause undue prejudice.[30] Warren argues that if Kendall is permitted to amend its complaint, discovery will need to be reopened on the questions of damage and defect.[31] Warren claims that this will require new discovery efforts, including additional document production and depositions; new expert inspections, analysis, reports, and depositions; and new motion practice.[32] ECC/ECI agrees with Warren, that permitting

---

[26] Reply to Opposition to Motion to Amend Complaint at 5, Docket No. 329.

[27] Docket No. 307.

[28] Docket No. 328.

[29] Motion to Amend Complaint at 5, Docket No. 316; Reply to Opposition to Motion to Amend Complaint at 2, Docket No. 329.

[30] Warren's Opposition to Motion to Amend Complaint at 6, Docket No. 322.

[31] Id. at 2–3.

[32] Id.

ORDER – Motion to Amend Complaint - 8 -

amendment at this juncture would result in significant prejudice because it would necessitate new discovery, including new expert discovery and motion work.[33]

Defendants have the better of the prejudice arguments. If the court were to permit Kendall to amend its complaint at this time, such an amendment would undoubtedly result in great prejudice to defendants.

Kendall's proposed amended complaint presents an entirely new claim at a time when claims made in Kendall's original complaint were ready for trial. That is to say, the original scheduling and planning order program for the pretrial development of this case had been completed. Granting Kendall's motion to amend would require not just an extension of the time for amending Kendall's complaint. Rather, a completely new case schedule would be required. Discovery would have to be reopened. "Paper" discovery as well as depositions would be required. Expert discovery would necessarily be reopened. The possibility of discovery motions and potential dispositive motions would likely follow. The foregoing would certainly be time-consuming, expensive, and therefore prejudicial to defendants. See Coleman, 232 F.3d at 1295 (quoting Lockheed Martin Corp. v. Network Sols., Inc., 194 F.3d 980, 986 (9th Cir.1999)) ("A need to reopen discovery and therefore delay the proceedings supports a district court's finding of prejudice from a delayed motion to amend the complaint."); Acri v. Int'l Ass'n of Machinists & Aerospace Workers, 781 F.2d 1393, 1398-99 (9th Cir. 1986) (district court's finding that amendment would necessitate further discovery and therefore prejudice defendant supports denial of leave to amend).

---

[33]ECC/ECI's Opposition to Motion to Amend Complaint at 9, Docket No. 323.

Kendall has not established good cause for leave to amend and, more importantly, has not established good cause for a complete reopening of this case for purposes of litigating Kendall's claims based upon the 913-2 engine block heater. Granting Kendall's motion to amend would prejudice both Warren and ECC/ECI.

Kendall's motion to amend is denied.

DATED at Anchorage, Alaska, this  2nd  day of May, 2022.

/s/   H. Russel Holland
United States District Judge